Thomas Flagg,                              :
                    Petitioner             :
                                           :   No. 641 M.D. 2011
          v.                               :
                                           :   Submitted:  March 11, 2016
International Union, Security, Police,      :
Fire Professionals of America,             :
Local 506; International Union,            :
Security, Police, Fire Professionals of    :
America; Pennsylvania State System         :
of Higher Education; Cheyney               :
University of Pennsylvania, and            :
Frank Kelly,                               :
                    Respondents            :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
JUDGE McCULLOUGH                           FILED:  August 23, 2016


          Presently before this Court is the application of Frank Kelly (Kelly) for summary relief, seeking to dismiss Counts III and IV of Thomas Flagg's (Flagg) second amended petition for review on the basis that they fail to state a cognizable cause of action against him.


## Facts and Procedural History

          The present matter arose from an alleged altercation that occurred between Kelly and Flagg.  At the time of the alleged altercation, Kelly and Flagg were both sergeants in the Cheyney University (Cheyney) Campus Police Department

and belonged to the same "meet and discuss" unit, which consisted of first-level supervisors of campus police and security officers employed at each of the fourteen public universities that comprise the Pennsylvania State System of Higher Education (PSSHE). Cheyney is a public university and one of the fourteen institutions of PSSHE. (Second Amended Petition for Review at ¶¶2-5, 9.)

At all relevant times, International Union, Security, Police, Fire Professionals of America, Local 506 (Local 506) and International Union, Security, Police, Fire Professionals of America (SPFPA) were certified by the Pennsylvania Labor Relations Board (PLRB) as the exclusive bargaining agents of Kelly and Flagg's meet and discuss unit. A memorandum of understanding existed between PSSHE, Local 506, and SPFPA that provided for a grievance and arbitration procedure to resolve disputes regarding the imposition of discipline against unit members. As the unit's exclusive representatives, Local 506 and SPFPA were also the exclusive representatives of individual first-level supervisors for resolving disputes pursuant to the memorandum of understanding. (Second Amended Petition for Review at ¶¶8, 10-11.)

In 2005, Flagg filed unfair labor practices charges with the PLRB against PSSHE and Cheyney, without the representation of Local 506 or SPFPA. The PLRB dismissed Flagg's charges on the grounds that he lacked standing to prosecute the charges because he was an individual. According to Flagg, this event caused him to fall into disfavor with the unions. (Second Amended Petition for Review at ¶¶12-13.)

In May 2007, Kelly filed a complaint against Flagg with Cheyney, alleging that Flagg had compromised a criminal investigation Kelly was conducting regarding on-campus thefts by revealing the name of a suspect to another university

2

employee who was not involved in Kelly's investigation. On May 15, 2007, Cheyney's interim president issued a letter to Flagg terminating his employment. (Second Amended Petition for Review at ¶¶16, 19.)

Consequently, Local 506 and SPFPA filed a grievance regarding Flagg's termination and the matter proceeded to arbitration pursuant to the memorandum of understanding. On March 9, 2009, the arbitrator issued her award, sustaining the grievance and finding that Flagg did not knowingly reveal to any university employee the name of a suspect in Kelly's investigation. However, she imposed a thirty-day suspension, without pay, because she determined that Flagg had improperly "speculated" or "gossiped" with a fellow employee over who should be a suspect of the investigation. (Second Amended Petition for Review at ¶¶20-21, 24-25.)

In September 2009, an argument occurred between Kelly and Flagg after Kelly denied Flagg's request to assist him in retrieving vehicles for the Campus Police Department. After the argument, Kelly filed a complaint with the Pennsylvania State Police, accusing Flagg of assaulting him and, as a result, criminal charges were filed against Flagg. On September 24, 2009, Flagg was placed on administrative leave pending the outcome of the criminal charges. However, on March 9, 2010, while the criminal charges were still pending, Flagg was terminated from his position with the Campus Police Department. (Second Amended Petition for Review at ¶¶35-40.)

On March 25, 2010, Local 506 and SPFPA again filed a grievance with Cheyney and PSSHE regarding Flagg's termination. On November 8, 2010, Kelly sent a letter to Lou Tartack, Local 506's president, stating that Flagg had assaulted him, was found guilty, and had been ordered to attend anger management classes and refrain from contact with him. He also stated that rehiring Flagg would conflict with

the court's no-contact order and that "if SPFPA jeopardizes my safety, by effectively reinstating Thomas Flagg, who assaulted me, was convicted and ordered to stay away from me, I am prepared to bring a Class Action Lawsuit against SPFPA and Cheyney University to ensure the safety of all." (Second Amended Petition for Review, Exhibit E.) On September 3, 2011, Flagg received a letter from SPFPA's "International Arbitration Screening Committee," advising him that it would be withdrawing his grievance because it determined that his grievance lacked merit to warrant arbitration. (Second Amended Petition for Review at ¶¶65, 70-71, 73; Exhibit D.)

On November 14, 2011, Flagg filed a complaint in the Delaware County Court of Common Pleas against Local 506 and SPFPA, seeking declaratory relief requiring the unions to seek arbitration of Flagg's 2010 termination and damages against the unions for violating their duty of fair representation when they arbitrarily and in bad faith failed to pursue arbitration of his grievance.[1] PSSHE and Cheyney were listed as additional defendants in Flagg's complaint.

On February 28, 2014, Flagg filed a motion for an order granting leave to file an amended complaint, seeking to add new claims and new parties. PSSHE, Cheyney, SPFPA, and Local 506 filed objections to the same. On April 14, 2014, Flagg filed a praecipe to withdraw his motion and simultaneously filed a motion for leave to file a second amended complaint. On April 15, 2014, a senior judge of this Court issued an order giving the respondents until May 5, 2014 to file an answer to Flagg's motion. PSSHE filed objections to Counts I and II of the complaint, but did not file objections to proposed Counts III and IV, which attempted to add Kelly as an

---

[1] On February 17, 2012, the matter was transferred to this Court's original jurisdiction.

4

additional respondent. SPFPA and Local 506 also filed objections to Counts I and IV of the proposed complaint.

On July 21, 2014, this Court issued an order denying Flagg's request to file Count I but granting Flagg leave to amend Counts II-IV and permitting him to add Kelly as a respondent.

On August 4, 2014, Flagg filed a second amended petition for review,[2] which was served on Kelly via certified mail in August 2015. In his petition, Flagg brought an action against SPFPA and Local 506, alleging a breach of the unions' duty of fair representation (Count II) when they failed to process his grievance through arbitration pursuant to the memorandum of understanding.[3] Flagg also brought a section 1983[4] action against Kelly for allegedly violating his First Amendment rights (Count III) and an action against Kelly, SPFPA, and Local 506 for tortious interference with contractual relations (Count IV).

On September 25, 2015, Kelly filed an application for summary relief pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1532(b), arguing that Flagg's section 1983 action must fail and Count III should be dismissed because: Kelly is not a "person" for purposes of section 1983; the Eleventh Amendment to the United States Constitution shields him from liability; Flagg failed to show the

---

[2] In previous filings, Flagg had captioned his pleading as a complaint. However, pursuant to Chapter 15 of the Pennsylvania Rules of Appellate Procedure, a petition for review is the proper pleading by which to sue the state and its entities.

[3] Flagg also named PSSHE and Cheyney as defendants to this action because he alleged they conspired, colluded, and/or actively participated in the unions' breach of their duty of fair representation. (Second Amended Petition for Review ¶¶29, 76-79.)

[4] 42 U.S.C. §1983.

deprivation of a constitutional right; and the action is barred by the statute of limitations. Kelly also argued that he is statutorily immune from Flagg's tortious interference claim and, accordingly, Count IV should be dismissed.

## Discussion

Pa.R.A.P. 1532(b) provides that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b). "An application for summary relief is properly evaluated according to the standards for summary judgment." *Myers v. Commonwealth*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015). That is, in ruling on a motion for summary relief, the evidence must be viewed in the light most favorable to the non-moving party and the court may enter judgment only if: (1) there are no genuine issues of material fact; and (2) the right to relief is clear as a matter of law. *Northwestern Youth Services, Inc. v. Department of Public Welfare*, 1 A.3d 988, 990 n.1 (Pa. Cmwlth. 2010).

### Count III of Flagg's Second Amended Petition for Review

Section 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. §1983.

6

In determining whether a plaintiff has stated a cognizable cause of action under section 1983, the inquiry must focus on whether two essential elements are met: (1) whether the complained of conduct was committed by a person acting under color of state law; and (2) whether the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Palmer v. Bartosh*, 959 A.2d 508, 514 (Pa. Cmwlth. 2008).

The United States Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *see also Wareham v. Jeffes*, 564 A.2d 1314, 1321-22 (Pa. Cmwlth. 1989). However, state officers may be subject to section 1983 liability for damages in their personal capacities even when the conduct in question relates to their official duties. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997).

**Personal v. Official Capacity**

Kelly argues that Flagg's section 1983 claim must fail because Flagg sued Kelly in his official capacity and, therefore, he is not a "person" for purposes of section 1983 liability. Conversely, Flagg argues that there is a genuine issue of material fact regarding whether Kelly was sued in his personal or official capacity, which precludes entry of summary relief.

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id*. To determine whether the defendant has been sued in his individual

7

or official capacity, the court must look to the complaint and the course of the proceedings to determine whether the defendant has been sued in his individual or official capacity. *Colvin v. McDougall*, 62 F.3d 1316, 1317 (11th Cir. 1995).

In *Colvin,* the United States Court of Appeals for the Eleventh Circuit determined that the individual defendant was sued in his official capacity because: the caption listed the defendant as the "Sherriff of the Lee County;" each time the individual was referenced in the complaint he was identified as the sheriff of the county; and, most importantly, the plaintiff's counsel stated on the record that the suit was brought against the sheriff in his official capacity. *Id*. at 1317-18.

Here, Kelly is listed in the caption of Flagg's second amended petition for review only as "Frank Kelly," Kelly's official position is not included. Moreover, when Kelly is identified in Flagg's complaint, he is predominately referred to as "Defendant Kelly" and his official position is omitted. Additionally, Flagg specifically alleged that:

> Acting under color of State laws, regulations, and policies pertaining generally to supervision of police and pertaining specifically to the Campus Police of Cheyney University, Defendant Kelly misused his new position of Lieutenant to illegally and improperly coerce and influence SPFPA/Local 506 to withdraw Plaintiff Flagg's 2009 termination grievance and to withdraw Plaintiff's request for arbitration of that grievance.

(Second Amended Petition for Review at ¶83.)

Flagg's second amended petition for review seeks to impose personal liability upon Kelly for the alleged misuse of his position because of purported animus toward Flagg; he is not seeking to impose liability against the entity as a result of Kelly's conduct. Therefore, the second amended petition for review suggests that Flagg sued Kelly in his personal capacity, not his official capacity.

8

Accordingly, summary relief on these grounds is not appropriate because Kelly's right to relief as a matter of law is not clear.

**Eleventh Amendment**

Next, Kelly asserts that Flagg's section 1983 claim must fail because the Eleventh Amendment shields him from liability. In response, Flagg argues that the Eleventh Amendment does not bar his suit because he sued Kelly in his personal capacity.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. In other words, the Eleventh Amendment bars federal lawsuits against states and their agencies unless sovereign immunity has been expressly waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980).

The doctrine of sovereign immunity also extends to a state official acting in his or her official capacity because it "is not a suit against the official but rather is a suit against the official's office" and, therefore, is "no different from a suit against the State itself." *Will*, 491 U.S. at 71 (internal citations omitted). However, the Eleventh Amendment does not bar a suit against a state official acting in his or her individual or personal capacity. *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

As articulated above, Flagg's second amended petition for review suggests that he sued Kelly in his personal capacity and, therefore, the Eleventh Amendment is not applicable. As such, Kelly's right to relief is not clear and summary relief on these grounds is improper.

9

**Deprivation of Constitutional Right**

Kelly also argues that Flagg has failed to state a cognizable cause of action pursuant to section 1983 because he failed to allege that Kelly's letter caused a deprivation of Flagg's constitutional right to participate in union activity.

To establish personal liability for a defendant in a non-supervisory capacity pursuant to section 1983, there must be a cause in fact between the conduct complained of and the constitutional deprivation. *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990). The United States Court of Appeals for the Seventh Circuit explained that:

> For liability under section 1983, direct participation is not necessary. Any official who "causes" a citizen to be deprived of her constitutional rights can also be held liable. The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.

*Connor v. Reinhard*, 847 F.2d 384, 396-97 (7th Cir.), *cert. denied*, 488 U.S. 856 (1988).

The First Amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.

Filing a grievance pursuant to a collective bargaining agreement is a protected activity pursuant to the petition clause of the First Amendment *for purposes of a retaliation claim. Putaro v. Carlynton School District*, 615 F.Supp.2d 390, 395 (W.D. Pa. 2009). However, although a union may not arbitrarily ignore a meritorious

10

grievance, an employee does not have an absolute right to have his or her grievance taken to arbitration. *Vaca v. Sipes*, 386 U.S. 171, 191 (1967). The United States Supreme Court has stated that:

> If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully. . . . Nor do we see substantial danger to the interests of the individual employee if his statutory agent is given the contractual power honestly and in good faith to settle grievances short of arbitration.

*Id*. at 191-92.

Grievance procedures are collectively bargained for and a union's failure to bring a grievance does not implicate an employee's First Amendment right. *See also Township of Hellam v. Hellam Township Police Officers' Association*, 722 A.2d 740, 745 (Pa. Cmwlth. 1998) (stating that, absent a specific provision in the CBA, an individual has no standing to request arbitration because, unless the CBA provides otherwise, the individual employee is not a party to the CBA and, thus, cannot enforce the rights granted under the same). The propriety of a union's decision to pursue or withdraw the grievance is within its bargained-for discretion and an employee's remedy in such cases is an action alleging the union breached its duty of

11

fair representation.[5]  *See* Section 701 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.701 (stating that matters subject to collective bargaining are "wages, hours and *other terms and conditions of employment*, . . . .) (emphasis added); Section 702 of the PERA, 43 P.S. §1101.702 ("Public employers, however, *shall be required* to meet and discuss on policy matters affecting wages, hours and *terms and conditions of employment as well as the impact thereon* upon request by public employe representatives.") (emphasis added). Moreover, this Court finds it persuasive that, in the present matter, the right Flagg seeks to enforce, arbitration, is purportedly provided for pursuant to the memorandum of understanding, i.e., contractual, not in the Constitution.  (Second Amended Petition for Review at ¶84.)

Accordingly, Flagg's section 1983 claim must fail as a matter of law because the constitutional right he alleged, the First Amendment right to participate in union activities, is not implicated when a union fails to pursue a bargained-for grievance procedure with the employer.[6]  *See Spiker v. Allegheny County Board of*

---

[5] Flagg directs this Court's attention to *Moore v. Susquehanna Area Regional Airport Authority*, (M.D. Pa. No. Civ.A. 1:02-CV-0535, filed Sept. 30, 2005), and argues that this case indicates that he has stated a cognizable section 1983 action because, in *Moore*, the court denied the defendants' renewed motion for judgment as a matter of law and held that there was sufficient evidence for a jury to find that the plaintiff's employment was terminated *in retaliation* for engaging in union organizing activities.  As articulated above, the filing of a grievance pursuant to a collective bargaining agreement is a protected activity under the First Amendment *for purposes of a retaliation claim*.  However, *Moore* is readily distinguishable from the present matter because Flagg has not alleged a retaliation claim.  Rather, he has only alleged that his right to have his union process his employment grievance through arbitration is protected by the First Amendment.  A union member does not have a First Amendment right to have a grievance processed through arbitration.  That is a matter reserved for the relevant collective bargaining agreement.

[6] Based on this disposition, we need not address Kelly's argument regarding whether Flagg's section 1983 claim was barred by the relevant statute of limitations.

*Probation and Parole*, 920 F.Supp.2d 580, 593 (W.D. Pa. 2013) (stating that "[a] plaintiff cannot prevail in an action brought under § 1983 without establishing an underlying violation of a federal constitutional or statutory right.").

**Count IV of Flagg's Second Amended Petition for Review**

Finally, Kelly asserts that he is immune from Count IV of Flagg's second amended petition for review pursuant to section 2310 of the Pennsylvania Consolidated Statutes (Act)[7] because he was a state employee acting within the scope of his duties. Conversely, Flagg argues that he has stated a cognizable claim because Kelly's conduct that gave rise to the instant action was not within the scope of his duties as a lieutenant in the Campus Police Department.

Section 2310 of the Act states, in pertinent part, that:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees *acting within the scope of their duties*, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

1 Pa.C.S. §2310 (emphasis added).

Sovereign immunity may be overcome where the plaintiff can establish: (1) a common law or statutory cause of action under which damages could be recoverable if not for the immunity defense, and; (2) the alleged negligent act falls within one of the nine specific exceptions provided in section 8522(b) of the Judicial

---

[7] 1 Pa.C.S. §2310.

Code (Code), commonly referred to as the Political Subdivision Tort Claims Act.[8] *Kull v. Guisse*, 81 A.3d 148, 157 (Pa. Cmwlth. 2013). Under Pennsylvania law, sovereign immunity applies to negligent and intentional torts. *Mitchell v. Luckenbill*, 680 F.Supp.2d 672, 682 (M.D. Pa. 2010). However, a Commonwealth employee who is not acting within the scope of employment cannot claim sovereign immunity as a defense. *Schell v. Guth*, 88 A.3d 1053, 1067 (Pa. Cmwlth. 2014).

Under Pennsylvania law, an action falls within the scope of employment if: (1) it is the kind that the employee is employed to perform; (2) it occurs substantially within the job's authorized time and space limits, and; (3) it is motivated at least in part by a desire to serve the employer. *Mitchell*, 680 F.Supp.2d at 682 (internal citation omitted).

Here, the action in question is Kelly's November 8, 2010 letter to Tartack, Local 506's president, indicating that Flagg had assaulted him and that he is prepared to bring a class action suit against the union and Cheyney to ensure others' safety. When Kelly signed the letter, he included his position in Cheyney's campus police, i.e., lieutenant. However, it is unclear how attempting to regulate a union's choice of what grievances to pursue falls within the kind of action a lieutenant of a campus police department is employed to perform. Certainly, this is not the activity that intuitively comes to mind when considering a lieutenant's duties in a campus police department. Therefore, because it is not clear that Kelly was acting within his

---

[8] Pursuant to section 8522(b) of the Code, the nine enumerated exceptions to immunity are: vehicle liability; medical-professional liability; care, custody or control of personal property; Commonwealth real estate, highways and sidewalks; potholes and other dangerous conditions; care, custody or control of animals; liquor store sales; National Guard activities; and toxoids and vaccines. 42 Pa.C.S. §8522(b).

scope of employment as a lieutenant for the Cheyney campus police when he sent a letter to Tartack, it is not clear that he is entitled to sovereign immunity.

Accordingly, because Kelly's right to relief is not clear, summary relief for Count IV is inappropriate.[9]

**Conclusion**

Because Flagg has failed to identify a violation of a federal constitutional right, his section 1983 claim must fail and summary relief is warranted for Count III. However, contrary to Kelly's assertion, it is not clear that he was acting within the scope of his employment as a lieutenant in Cheyney's campus police when he sent a letter to the union president and, therefore, it is unclear whether sovereign immunity applies. As such, summary relief for Count IV is denied.

_____
PATRICIA A. McCULLOUGH, Judge

---

[9] Flagg has since filed a motion for leave to file a third amended petition for review to "clear up any ambiguity . . . in Petitioner Flagg's Second Amended Petition for Review . . . ." (Motion for Leave to File Third Amended Petition for Review at 2.) However, because the issues raised in Flagg's motion are essentially rendered moot by the resolution of Kelly's instant application for summary relief, his motion is denied.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Flagg,       :
    Petitioner    :
            : No. 641 M.D. 2011
   v.       :
            :
International Union, Security, Police, :
Fire Professionals of American,  :
Local 506; International Union,  :
Security, Police, Fire Professionals of :
America; Pennsylvania State System :
of Higher Education; Cheyney  :
University of Pennsylvania, and  :
Frank Kelly,      :
    Respondents  :

## ***ORDER***

AND NOW, this 23rd day of 2016, Frank Kelly's (Kelly) application for summary relief is granted as to Count III of Thomas Flagg's (Flagg) second amended petition for review and Count III is hereby dismissed. However, Kelly's application for summary relief as to Count IV of Flagg's petition is denied. Therefore, Kelly is directed to file an answer to Flagg's second amended petition for review within thirty days of the date of this order. Further, Flagg's motion for leave to file a third amended petition for review is denied.

          _____
          PATRICIA A. McCULLOUGH, Judge