IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce Novak,                   :
                                 :
                Appellant    :
                                   :
                v.             : No. 1195 C.D. 2017
                                   : Submitted: September 28, 2018
Indiana University of       :
Pennsylvania               :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK[1]                                     FILED: July 21, 2021


         Bruce Novak (Novak), *pro se*, appeals from an order of the Court of Common Pleas of Indiana County (trial court) sustaining Indiana University of Pennsylvania's (IUP) preliminary objections (POs) to Novak's Second Revised Complaint and dismissing the Second Revised Complaint with prejudice. For the reasons that follow, we vacate and remand.

         In February 2014, IUP[2] notified Novak, an Assistant English Professor, that it would not renew his 2014-2015 academic year employment contract, and that

---

[1] This matter was reassigned to the author on April 16, 2019.

[2] IUP is one of 14 state-owned universities operated by the Pennsylvania State System of Higher Education (PASSHE). Section 2002-A of the Public School Code of 1949 (School Code),
**(Footnote continued on next page…)**

Novak's employment would be terminated effective May 30, 2014. Two years later, Novak initiated this action by filing a Complaint against IUP challenging his termination. IUP filed POs asserting failure to effect proper service (Pa. R.C.P. No. 1028(a)(1)), insufficient specificity (Pa. R.C.P. No. 1028(a)(3)), and legal insufficiency (Pa. R.C.P. No. 1028(a)(4) (demurrer)). In response, Novak withdrew his original Complaint and filed a First Amended Complaint. IUP reasserted its insufficient specificity and legal insufficiency POs and also objected on the basis that Novak's First Amended Complaint was time-barred by the statute of limitations. The trial court sustained IUP's insufficient specificity and legal insufficiency objections and declined to address the statute of limitations objection stating there is no statutory authority to sustain such an objection. The trial court afforded Novak 30 days to amend his complaint.

On January 20, 2017, Novak filed a 29-page, single-spaced Second Revised Complaint, which reads more like a rambling dissertation than a concise legal pleading (*see* Pa. R.C.P. No. 1019(a)), and is replete with references to movies and fictional characters like *It's a Wonderful Life* and Ebenezer Scrooge as well as historical figures including Socrates, Jesus, Confucius, Buddha, Muhammad, Cicero, Shakespeare, Emerson, Lincoln, Gandhi, Einstein, etc. As in his prior complaints, Novak asserted that his termination was a violation of academic freedom and, therefore, a violation of his constitutionally protected right to freedom of speech guaranteed by the First Amendment to the United States Constitution, U.S. Const. amend I. Novak alleged that IUP terminated his employment because IUP did not

---

Act of March 10, 1949, P.L. 30, *as amended*, added by the Act of November 12, 1982, P.L. 660, 24 P.S. §20-2002-A; *see Pennsylvania State System of Higher Education v. Association of State College and University Faculties*, 142 A.3d 1023 (Pa. Cmwlth. 2016), *appeal denied*, 166 A.3d 1218 (Pa. 2017).

agree with his teaching style, which focused on the "Human Heart and Soul in Courses in the Humanities and Liberal Studies."  Second Revised Complaint, ¶55. According to Novak, IUP disliked his "'personal approach' to teaching classes in 'liberal studies' in the 'humanities' centering on the cultivation of unquantifiable feelings, meanings, and purposes," and the pursuit of happiness. *Id.*, ¶¶16, 77. IUP also disagreed with his assignment of grades and insisted that Novak needed to "center on the production of hard 'college-level work,'" rather than the "soft" approach of "eliciting of personal heart and soul central to the humanities for millennia." *Id.*, ¶¶54, 80 (emphasis omitted).  He maintained that IUP's decision not to renew his employment constituted a violation of academic freedom of speech. *Id.*, ¶¶82, 83.  IUP justified his removal based on his noncompliance with small procedural negligence, namely failing to obtain a signature on a student teacher form. *Id.*, ¶¶71, 73, 76. Notably, Novak named IUP as the only defendant.  Novak requested the restoration of his employment and the award of monetary damages.  In response, IUP again reasserted its legal insufficiency and insufficient specificity POs. *Id.*, ¶97.

Following argument, the trial court sustained IUP's legal insufficiency demurrer and dismissed the Second Revised Complaint with prejudice.  The trial court accepted as true the few well-pleaded facts contained in the Second Revised Complaint, namely that Novak was employed by IUP as an Assistant English Professor and was terminated for exercising his "First Amendment [r]ight to [a]cademic [f]reedom of [s]peech," as well as any reasonable inferences deducible therefrom. *See* Second Revised Complaint, ¶1.  The trial court discerned a cause of action pursuant to 42 U.S.C. §1983 (Section 1983), which is the manner by which

3

an aggrieved party challenges an act by an actor of a state or federal government for violating the aggrieved party's constitutional rights.

To sustain a Section 1983 claim, the trial court opined that the plaintiff "must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." Trial Court Op., 5/4/2017, at 5-6 (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000)). The trial court determined that IUP is not a "person" under Section 1983 because it is a state agency or instrumentality entitled to immunity under the Eleventh Amendment.[3] Trial Court Op., at 10 (citing federal precedent). On this basis, the trial court sustained IUP's demurrer for legal insufficiency and dismissed Novak's Second Revised Complaint with prejudice. In light of this disposition, the trial court did not address IUP's insufficient specificity objection.

Novak's appeal to this Court followed.[4, 5] Novak claims that the trial court improperly dismissed his legal action because the Declaration of Independence

---

[3] The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

[4] Novak initially filed his appeal with the Pennsylvania Superior Court, which transferred the matter to this Court.

[5] Our review of a trial court's order sustaining POs and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an error of law. *Public Advocate v. Brunwasser*, 22 A.3d 261, 266 n.5 (Pa. Cmwlth. 2011). In reviewing POs, "we deem all material facts averred in the complaint, and all reasonable inferences that can be drawn therefrom, to be true." *Commonwealth by Shapiro v. Golden Gate National Senior Care LLC*, 194 **(Footnote continued on next page…)**

4

is superior to the United States Constitution, and any subsequent law. He maintains that, in his Second Revised Complaint, he "establish[ed] the right to [a]cademic [f]reedom of [s]peech to teach centrally through humane principles and with humane objectives in the fields of the Humanities and Liberal Arts." Appellant Novak's Brief at 16 (emphasis omitted). He contends that the trial court erred when it concluded that IUP is not a "person" subject to suit under Section 1983 and dismissed his Second Revised Complaint.[6]

> Section 1983 provides, in relevant part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

---

A.3d 1010, 1022 (Pa. 2018). "The purpose of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven." *Id.* "When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, [POs] will be sustained only where the case is free and clear of doubt." *Id.* (internal quotation and citation omitted). "With regard to [POs] in the nature of demurrer, we consider 'whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.'" *Id.* (quoting *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 274 (Pa. 2005)). "Such review raises a question of law as to which our standard of review is *de novo* and our scope of review is plenary." *Public Advocate*, 22 A.3d at 266 n.6 (internal quotation and citation omitted).

[6] Novak does not assert that he presented any other claims in his Second Revised Complaint, focusing solely on whether the trial court erred in sustaining IUP's PO on the basis that his Section 1983 claim was legally insufficient. We also note that the trial court was under no duty to scour Novak's complaint to uncover any potential claims therein. *Steiner v. Markel*, 968 A.2d 1253, 1258 (Pa. 2009).

42 U.S.C. §1983. Section 1983 does not create substantive rights, but merely provides a remedy for the violation of rights created under the federal constitution or statutes. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Wilson v. Marrow*, 917 A.2d 357, 362 n.4 (Pa. Cmwlth. 2007). Indeed, a plaintiff must establish an underlying deprivation of a federal constitutional or statutory right. *Id.*

Novak claims that IUP violated his right to academic free speech arising under the First Amendment to the United States Constitution by terminating him from his teaching position. The Free Speech Clause of the First Amendment provides, in pertinent part, "Congress shall make no law . . . abridging the freedom of speech[.]" U.S. Const. amend. I. First Amendment claims are applicable to the States by virtue of the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV. *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 831 (1983).

To determine whether a plaintiff has stated a cognizable cause of action under Section 1983, we focus on two elements: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *accord Flagg v. International Union, Security, Police, Fire Professionals of America, Local 506*, 146 A.3d 300, 305-06 (Pa. Cmwlth. 2016); *Palmer v. Bartosh*, 959 A.2d 508, 514 (Pa. Cmwlth. 2008).

In order to meet the first element of a Section 1983 action, the defendant must qualify as a "person." States are protected by the Eleventh Amendment and are not "persons" under Section 1983. *Will v. Michigan*, 491 U.S. 58, 71 (1989);

6

*Flagg*, 146 A.3d at 307.  However, not every government entity enjoys Eleventh Amendment immunity.  *See Goldman v. Southeastern Pennsylvania Transportation Authority*, 57 A.3d 1154, 1173, 1175 (Pa. 2012) (citing *Alden v. Maine*, 527 U.S. 706, 756 (1999)) (immunity does not extend to counties, cities, municipal corporations or other governmental entities that are not "arms of the state").  To qualify for Eleventh Amendment immunity, the government agency or instrumentality must be an "arm of the state." *Id.*

The trial court, in determining that IUP was an arm of the state, relied on federal precedent, which has consistently held that the Pennsylvania State System of Higher Education (PASSHE) and its members are cloaked with Eleventh Amendment immunity for Section 1983 purposes.  *See Bradley v. West Chester University*, 880 F.3d 643 (3d Cir. 2018); *Skehan v. State System of Higher Education*, 815 F.2d 244, 247-49 (3d Cir. 1987) (holding that PASSHE was entitled to Eleventh Amendment immunity); *Toth v. California University of Pennsylvania*, 844 F. Supp. 2d 611, 648 (W.D. Pa. 2012) (holding that one of PASSHE's member universities was entitled to Eleventh Amendment immunity from a Section 1983 suit); *O'Hara v. Indiana University of Pennsylvania*, 171 F. Supp. 2d 490, 495-98 (W.D. Pa. 2001) (holding that IUP enjoyed Eleventh Amendment immunity).

In *Bradley*, the Third Circuit Court of Appeals examined whether PASSHE and West Chester University (WCU) are entitled to Eleventh Amendment immunity.  "Because of the 'sweeping immunity from suit' this Amendment provides, and in order to 'ensure that [the Amendment's] reach does not extend beyond proper bounds,'" the Court "developed a fact-intensive, three-step balancing test to ascertain whether a [S]tate-affiliated entity is an arm of the State that falls within the ambit of [that] Amendment."  880 F.3d at 654 (internal quotation and

7

citation omitted).  The Court then considered three factors, known as the *Fitchik*[7] factors, when determining if a State-affiliated entity is an "arm of the State" entitled to Eleventh Amendment immunity.  *Id.* at 654.  Those factors are:  "(1) whether the money that would pay any judgment would come from the state; (2) the status of the agency under state law; and (3) the degree of autonomy possessed by the agency."  *Id.* at 654-55.  The Court ascribed equal weight to each of the factors.  *Id.* at 655.  After applying the factors, the Court concluded that PASSHE and WCU were entitled to Eleventh Amendment immunity.  *Id.* at 660.

Although federal precedent specifically holds that PASSHE and its universities are entitled to Eleventh Amendment immunity, this precedent, while certainly persuasive and instructive, is not binding on this Court.  *See GGNSC Clarion LP v. Kane*, 131 A.3d 1062, 1069 n.15 (Pa. Cmwlth.), *aff'd*, 152 A.3d 983 (Pa. 2016) ("Generally, decisions of federal district courts and courts of appeals are not binding on this Court, even where a federal question is involved, but they may have persuasive value.").  Rather, this Court is constrained by the Pennsylvania Supreme Court's decisions and our own precedent.

The Courts of this Commonwealth have identified PASSHE and its member universities as agencies or instrumentalities of the Commonwealth in some circumstances.  *See Pennsylvania State University v. Derry Township School District*, 731 A.2d 1272, 1274 (Pa. 1999) (making distinction between PSU as "a *state-related* institution of higher education" and the 14 universities of PASSHE that "are owned and operated by the Commonwealth" and statutorily designated as "government instrumentalit[ies]"); *Bucks County Community College v. Bucks County Board of Assessment Appeals*, 608 A.2d 622, 624 (Pa. Cmwlth. 1992)

---

[7] *See Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir. 1989).

8

(recognizing for comparison purposes that PASSHE and its universities have historically been considered agencies of the Commonwealth because they are "owned and operated" by the Commonwealth). However, these decisions did not determine whether PASSHE or its universities are "arms of the state" for Eleventh Amendment immunity purposes.

In *Goldman*, the Pennsylvania Supreme Court considered the issue of whether the Southeastern Pennsylvania Transportation Authority (SEPTA), a state-created entity, was an "arm of the Commonwealth" within the meaning of the Eleventh Amendment and entitled to immunity from negligence claims brought under federal law. 57 A.3d at 1165. In reaching its determination, the Pennsylvania Supreme Court reviewed United States Supreme Court jurisprudence and the *Fitchik* factors and fashioned its own arm-of-the-state test for Eleventh Amendment purposes. *Id.* at 1179. The *Goldman* test examined the various "'indicators of immunity' as they relate to the organizational structure, powers, and obligations of SEPTA under Pennsylvania law, in order to determine if, uniformly, they indicate SEPTA was 'structured . . . to enable it to enjoy the special constitutional protection of the [Commonwealth.]'" *Id.* at 1179. These indicators include:

> (1) the legal classification and description of SEPTA within the governmental structure of Pennsylvania, both statutorily and under our caselaw;
>
> (2) the degree of control the Commonwealth exercises over the SEPTA Board, both through the power of appointment, and the power to subsequently veto its actions;
>
> (3) the power of the SEPTA Board to independently raise revenue on its own;

9

(4) the degree of funding provided by the five counties SEPTA serves relative to that provided by the Commonwealth;

(5) whether any monetary obligation incurred by SEPTA is binding on the Commonwealth; and

(6) whether the core function of SEPTA—providing public transportation services—can be categorized as a function which is normally performed by local government or state government.

*Id.* The Court regarded each of these indicators "as being of equal importance." *Id.* However, the Court opined that, if these indicators of immunity did not all point towards the same conclusion, then its determination would depend on whether allowing a federal suit against a state-government entity would offend the dignity of the Commonwealth, and, secondarily, whether the Commonwealth has any actual legal liability for such suits. *Id.*

Applying this test to SEPTA, the Court reasoned that, although SEPTA was statutorily classified by the legislature as an "agency" of the Commonwealth and received a greater level of financial assistance from the Commonwealth than from the counties in which it operates, it did not possess the other indicators of immunity. *Goldman*, 57 A.3d 1179-81. Namely, the Commonwealth does not exercise the necessary degree of control over SEPTA; SEPTA is empowered to raise revenue on its own; and SEPTA may not legally bind the Commonwealth for any debt or obligation. *Id.* As for whether transportation served a core function of state government, the Court ruled that both state and local governments share responsibilities in providing such services and that SEPTA's provision of public transportation services did not definitively point toward or away from a conclusion that SEPTA is an arm of the state. *Id.* at 1181. The Court concluded that the test

was not dispositive because only a plurality of indicators pointed toward finding that SEPTA is not immune. *Id.* at 1181-82.

Consequently, the Court turned its analysis to whether allowing SEPTA to be sued under federal law would thwart the two principal purposes of the Eleventh Amendment – dignity and solvency. *Goldman*, 57 A.3d at 1181-82. The Court determined that allowing SEPTA to be sued under federal law would not pose a threat to the Commonwealth's dignity as a sovereign state because SEPTA is a distinct legal entity with the power to sue and be sued in its own capacity. *Id.* at 1182. The Court also reasoned it would not pose a threat to the Commonwealth's solvency because the Commonwealth would not be legally liable for any judgment rendered against SEPTA. *Id.* at 1184. Ultimately, the Court held that SEPTA was not an arm of the Commonwealth and, therefore, not entitled to Eleventh Amendment immunity. *Id.* at 1185.

Although *Goldman* did not involve PASSHE or its universities, the Court addressed the critical question at hand – whether a governmental entity is entitled to Eleventh Amendment immunity from federal claims in state courts. *See Kull v. Guisse*, 81 A.3d 148, 160 (Pa. Cmwlth. 2013) (clarifying that "*Goldman* does not address the Commonwealth's sovereign right to determine whether, and to what extent, it may be sued in its own courts *on state law claims*"). Thus, we believe this test applies in determining IUP's immunity status under the Eleventh Amendment in a suit involving federal law in state court.

Here, the trial court dismissed Novak's Section 1983 claims by relying on Eleventh Amendment immunity under federal court jurisprudence without conducting the *Goldman* test. Consequently, it is not clear whether or not IUP is a "person" for Section 1983 purposes in this litigation or immune from liability under

11

controlling Pennsylvania Supreme Court precedent. Therefore, the trial court erred by sustaining IUP's PO on this basis.

Unfortunately, the trial court did not address the second prong necessary to sustain a Section 1983 action, i.e., whether Novak has sufficiently stated a claim that IUP's conduct deprived Novak of "rights, privileges, or immunities secured by the Constitution or laws of the United States," *Parratt*, 451 U.S. at 535; *accord Flagg*, 146 A.3d at 305-06, or IUP's insufficient specificity PO.[8] Because the trial court has not provided this Court with an alternate basis upon which to affirm its order sustaining the POs, we are constrained to vacate and remand the matter to the trial court for further analysis in accordance with the foregoing opinion.

_____

[8] To survive this objection, Novak's Second Revised Complaint must meet the specificity requirements of Rule 1019 of the Pennsylvania Rules of Civil Procedure. As our Supreme Court has explained:

> Rule 1019(a) provides that in pleadings, "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form[.]" Pa. R.C.P. [No.] 1019(a). Rule 1019(b) requires that "[a]verments of fraud or mistake shall be averred with particularity. Malice, intent, knowledge, and other conditions of mind may be averred generally." Pa. R.C.P. [No.] 1019(b). The purpose of these rules is to require the pleader to disclose material facts sufficient to notify the adverse party of the claims it will have to defend against.

*Golden Gate*, 194 A.3d at 1029 (citations omitted). Indeed, "[t]he pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense and they must be sufficient to convince the court that the averments are not merely subterfuge." *Id.* (internal quotation and citation omitted).

This Court has held that a failure to adequately plead a claim "can, and typically does, result in the dismissal of the claim and/or cause of action." *Brimmeier v. Pennsylvania Turnpike Commission*, 147 A.3d 954, 967 (Pa. Cmwlth. 2016), *aff'd*, 161 A.3d 253 (Pa. 2017) (quoting *Allen v. State Civil Service Commission*, 992 A.2d 924, 927 (Pa. Cmwlth. 2010)).

12

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce Novak,                 :
                                   :
           Appellant    :
                                   :
              v.            : No. 1195 C.D. 2017
                                   :
Indiana University of       :
Pennsylvania            :

**O R D E R**

AND NOW, this 21st day of July, 2021, the order of the Court of Common Pleas of Indiana County, dated May 4, 2017, is VACATED, and this matter is REMANDED for proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
MICHAEL H. WOJCIK, Judge