# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Quinterio Smart,                                    :
                            Appellant               :
                                                    :    No. 631 C.D. 2017
                    v.                              :
                                                    :    Submitted: January 19, 2018
Commonwealth of Pennsylvania,                       :
Department of Corrections;                          :
Donald O'Brien; Laurie Golubieski;                  :
Joseph Mataloni; Kathi Taylor;                      :
Theresa Delbalso; Kathy Brittain and               :
Correct Care Solutions, P.C.                        :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                 FILED: June 27, 2018


Quinterio Smart (Appellant) appeals, *pro se*, from the March 30, 2017 order of the Court of Common Pleas of Luzerne County (trial court), which, *inter alia*, dismissed Smart's complaint against the Commonwealth of Pennsylvania, Department of Corrections (Department); Laurie Golubieski; Kathi Taylor; Theresa Delbalso; Kathy Brittain; and Joseph Mataloni,[1] and entered a judgment of *non pros* in favor of Donald O'Brien and Correct Care Solutions, P.C. (together, Correct Care Defendants).

---

[1] Throughout this opinion, the Department, Laurie Golubieski, Kathi Taylor, Theresa Delbalso, and Kathy Brittain will collectively be referred to as the "Commonwealth Defendants." Joseph Mataloni will be referred to separately as "Defendant Mataloni."

## Facts and Procedural History

Smart is an inmate currently incarcerated at the State Correctional Institution (SCI)-Retreat. On August 25, 2016, he filed a complaint against the Commonwealth Defendants, Defendant Mataloni, and the Correct Care Defendants. (Original Record (O.R.) at Item No. 1.) The complaint alleged, *inter alia*, that Mr. O'Brien disclosed the fact that Smart carried the HIV virus to other HIV-positive inmates during a chicken pox quarantine at SCI-Retreat.[2] (Complaint, at 2.) Smart further asserted that, because of the purported disclosure, he was removed from quarantine and eventually sent to Temple University for medical treatment, where he was placed on medication and saw a psychiatrist due to burdensome stress, duress, emotional distress, and retaliation.

The complaint asserted six counts against the Commonwealth and Correct Care Defendants, and Defendant Mataloni: (I) breach of doctor/patient confidentiality and breach of implied contract; (II) medical negligence; (III) medical negligence (threatened denial of medical care); (IV) retaliation, discrimination, and intimidation; (V) reckless indifference to safety and security; and (VI) negligent infliction of emotional distress.

With the complaint, Smart attached certificates of merit certifying that expert testimony was not needed to prosecute his claims. (O.R. at Item Nos. 3-10.) In

---

[2] The complaint asserts that Smart was in the inmate waiting room with approximately 16 other inmates and two correctional officers. One of the correctional officers held a list with "HIV" written on the top and the bottom of the page, but the correctional officer told Smart those letters were crossed out. When Mr. O'Brien walked into the room to inform the inmates that they needed to be quarantined, he was questioned about the reason for the quarantine. Smart alleges that, in response, Mr. O'Brien "malicious[ly], deliberately and blatantly" stated, "[B]ecause all of you in this room are [HIV] [p]ositive." (Complaint, at ¶19.)

response, the Correct Care Defendants sent Smart a notice of intention to enter judgment of *non pros* for failure to file a certificate of merit.

On October 31, 2016, the Commonwealth Defendants and Defendant Mataloni filed preliminary objections in the nature of demurrer and motions to strike the complaint pursuant to Pa.R.C.P. No. 1028(a)(2)-(4). (O.R. at Item No. 29.) On November 4, 2016, the Correct Care Defendants filed the motion to strike Appellant's certificates of merit and for entry of judgment of *non pros* (motion to strike), along with an accompanying brief in support.[3] (O.R. at Item Nos. 32, 34.) Smart filed a response to the Commonwealth Defendants' and Defendant Mataloni's preliminary objections and to the Correct Care Defendants' motion to strike on November 28, 2016. (O.R. at Item Nos. 40, 42.)

On December 7, 2016, the trial court issued a rule to show cause, directing Smart to show cause as to why the relief requested in the motion to strike should not be granted and scheduling a hearing on February 6, 2017. (O.R. at Item No. 46.)

Smart sent a letter dated December 12, 2016, to the trial court. (O.R. at Item No. 54.) The letter acknowledged his receipt of the motion to strike. It further stated:

> Also according to this [r]ule to [s]how cause[,] [a]rgument has been scheduled on this [m]otion for February 6, 2017[,] at 9:30 a.m. I am writing this letter because I am incarcerated and will be unable to appear for this hearing. Further I am fully lacking in the ability to perform an argument on this motion and that is why I have filed a [m]otion with this Honorable Court for [a]ppointment of [c]ounsel.

*Id.*

---

[3] It appears that the Correct Care Defendants refiled the motion to strike and the accompanying brief, along with a rule returnable, on December 7, 2016. (O.R. at Item Nos. 47-49.)

On January 4, 2017, the Correct Care Defendants filed preliminary objections in the nature of a demurrer to the complaint pursuant to Pa.R.C.P. No. 1028(a)(4). (O.R. at Item No. 55.) Smart filed his response in opposition to those preliminary objections on January 23, 2017. (O.R. at Item No. 58.)

On February 6, 2017, the trial court conducted a hearing to consider the Correct Care Defendants' motion to strike, after which the matter was taken under advisement. Counsel for the Correct Care Defendants appeared at the hearing. (O.R. at Item No. 60.)

On March 30, 2017, the trial court issued its opinion and order, which resolved the Commonwealth Defendants' and Defendant Mataloni's preliminary objections and the Correct Care Defendants' preliminary objections and motion to strike.[4] In relevant part, the order (1) sustained Commonwealth Defendants' and Defendant Mataloni's preliminary objection in the nature of a demurrer for failure to state a claim and dismissed the complaint as to those defendants; (2) sustained Correct Care Defendants' objection in the nature of a demurrer for failure to state a claim upon which relief can be granted relating to Smart's breach of contract claim contained in Count I of the complaint; (3) denied Correct Care Defendants' preliminary objection in the nature of a demurrer as to Smart's claim of breach of the physician/patient privilege contained in Count I of the complaint; (4) sustained Correct Care Defendants' preliminary objection to dismiss any alleged cause of action for negligent infliction of emotional distress in Count VI of the complaint; and (5) granted Correct Care Defendants' motion to strike Smart's certificates of merit and for entry of judgment of

---

[4] In its opinion, the trial court represented that a hearing was held regarding the motion to strike, but "[o]ral argument was declined on all of the other [ ] motions by all parties." (Trial court's op. at 3.) Smart's argument that the trial court erred in failing to hold a hearing to consider the preliminary objections of the Commonwealth Defendants, Defendant Mataloni, and the Correct Care Defendants is addressed *supra*.

*non pros* in their favor as to Smart's breach of confidentiality claim contained in Count I, medical negligence claim in Count II, and negligent infliction of emotional distress claim contained in Count VI of the complaint.

On May 3, 2017, the trial court issued an order setting a status conference in this case. The order expressly stated that "[Smart] shall make appropriate arrangements to appear in person or contact the [trial] [c]ourt if a video conference is requested." (O.R. at Item No. 65.) On that same day, Smart filed a notice of appeal to this Court.[5] (O.R. at Item No. 66.)

---

[5] On June 1, 2017, the trial court issued an order setting a status conference, to occur via video, on June 15, 2017, for the purpose of addressing one remaining claim against the Correct Care Defendants. (O.R. at Item No. 70.) Smart appeared by video at the June 15 status conference. (O.R. at Item No. 72.) Counsel for Correct Care did not appear at the status conference and, via phone and email communication with the Court, represented his belief that all claims against Mr. O'Brien and the Correct Care Defendants had been dismissed or stricken. (O.R. at Item No. 77; Notes of Testimony (N.T.), at 2-4.)

At the June 15 status conference, the trial court addressed the Correct Care Defendants' belief that all claims against those defendants had been dismissed pursuant to the March 30, 2017 order. (O.R. at Item No. 73; N.T., 6/15/17, at 2-4.) Subsequently, the trial court issued an order dated June 19, 2017, acknowledging that the June 15 status conference was scheduled to address one remaining claim and stated that the "Correct Care Defendants indicated by email and telephone that they were aware of said hearing, but would not attend due to their belief that the claims against the Correct Care Defendants were dismissed in their entirety by the [ ] [o]rder dated March 30, 2017." (O.R. at Item No. 72.) The order does not direct any party to take any further action with respect to that remaining claim referenced by the trial court. *Id.*

As to whether there was a remaining issue, with respect to the motion to strike, the trial court interpreted Count I as a breach of confidentiality claim. On the other hand, with respect to the Correct Care Defendants' preliminary objection with respect to Count I, the same claim was interpreted as a breach of the doctor/patient relationship. Upon a thorough review of the record, it is clear that the allegations asserted in Smart's amended complaint regarding the breach of physician/patient privilege claim and the breach of confidentiality claim are one in the same. In fact, Smart refers to the claim as the "breach of doctor/patient confidentiality." Thus, it appears that the trial court conflated the terminology and, for purposes of this opinion, we will consider the two to be the same, analyzing both Correct Care's preliminary objection to Count I and the motion to strike Count I as a breach of the physician/patient privilege claim. As such, we find that, other than the breach of the doctor/patient

## Discussion

On appeal,[6] Smart asserts that the trial court erred in (1) finding that the Commonwealth Defendants and Defendant Mataloni were protected by the doctrine of sovereign immunity and that the medical and professional liability exception did not apply; (2) dismissing the claims against the Commonwealth Defendants and Defendant Mataloni, where such claims were based upon intentional and/or malicious conduct; (3) dismissing Count VI (negligence and negligent infliction of emotional distress) without providing Smart with an opportunity to amend the claim to cure any deficiencies; (4) striking the certificates of merit as to Counts I (breach of confidentiality), II (medical negligence), and VI (negligent infliction of emotional distress), and entering a judgment of *non pros* in favor of the Correct Care Defendants, where expert testimony was unnecessary and Smart could not afford to employ an expert witness; (5) determining that Smart waived his right to appear for a hearing; (6) ruling on the preliminary objections of the Commonwealth Defendants and Defendant Mataloni without holding a hearing; and (7) ruling that Smart's complaint was vague without either holding a hearing or offering Smart the opportunity to amend the complaint to cure any deficiencies.

---

privilege claim in Count I that was stricken by the trial court and is now subject to this appeal, no remaining claim existed against the Correct Care Defendants after the trial court issued its March 30, 2017 order and the June 15 status conference was unnecessary.

[6] When ruling upon preliminary objections, the Court is "required to accept as true the well-pled averments set forth in the . . . complaint, and all inferences reasonably deducible therefrom." *Pennsylvania State Lodge, Fraternal Order of Police v. Department of Conservation & Natural Resources*, 909 A.2d 413, 415 (Pa. Cmwlth. 2006), *aff'd*, 924 A.2d 1203 (Pa. 2007). Where a preliminary objection presents a question of law, such as objections related to issues of sovereign immunity and statutory interpretation, our standard of review is de novo and our scope of review is plenary. *Feldman v. Hoffman*, 107 A.3d 821, 826 n.7 (Pa. Cmwlth. 2014); *Bender v. Pennsylvania Insurance Department*, 893 A.2d 161, 162 (Pa. Cmwlth. 2006).

## Sovereign Immunity of the Commonwealth Defendants

The Commonwealth Defendants and Defendant Mataloni lodged a preliminary objection in the nature of a demurrer for the failure to state a claim upon which relief can be granted, arguing that they are entitled to sovereign immunity under Pennsylvania's Sovereign Immunity Act, 42 Pa.C.S. §§8521-8528. In his appeal, Smart asserts that the trial court erred in sustaining the Commonwealth Defendants' and Defendant Mataloni's preliminary objections on that basis. First, he alleges that the conduct of the Commonwealth Defendants and Defendant Mataloni was outside the scope of their employment, and that the "medical-professional liability" exception to the doctrine of sovereign immunity applies. He further argues that the Commonwealth Defendants' and Defendant Mataloni's actions were intentionally retaliatory in nature.

The doctrine of sovereign immunity provides that:

> Pursuant to section 11 of Article [I] of the Constitution of Pennsylvania, . . . the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain free from suit except as the General Assembly shall specifically waive the doctrine.

1 Pa.C.S. §2310; *see also* 42 Pa.C.S. §8521 ("Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. §2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise."). "Even if a cause of action has been made out against the defendants, the complaint will still fail to state a claim if the defendants are entitled to sovereign immunity." *Williams v. Syed*, 782 A.2d 1090, 1095 (Pa. Cmwlth. 2001).

7

We have consistently held that sovereign immunity protects the Commonwealth from suit in tort, and that such immunity extends to intentional torts conducted by Commonwealth employees while acting within the scope of their employment. *Kull v. Guisse*, 81 A.3d 148, 157 (Pa. Cmwlth. 2013). However, "[a] party may proceed against a Commonwealth agency if it can establish that damages would have been recoverable under common law (or a statute creating a cause of action) had the injury been caused by a defendant not protected by sovereign immunity," and the alleged act falls within "one of the specifically enumerated exceptions provided by the legislature." *LaChance v. Michael Baker Corp.*, 869 A.2d 1054, 1057 (Pa. Cmwlth. 2005) (citation omitted); 42 Pa.C.S. §8522(a)-(b).

We must first determine whether the alleged act falls within one of the nine enumerated exceptions to sovereign immunity provided for in section 8522(b) of the Sovereign Immunity Act. Because the legislature intended to shield the government from liability through sovereign immunity, the court must "apply a rule of strict construction in interpreting these exceptions." *Jones v. Southeastern Pennsylvania Transportation Authority*, 772 A.2d 435, 440 (Pa. 2001).

Here, the relevant conduct arises from the alleged disclosure of Smart's status as an HIV-carrier by Mr. O'Brien, a Correct Care Defendant, and the subsequent alleged retaliatory conduct of the Commonwealth Defendants and Defendant Mataloni.[7] Smart also contends that Defendant Mataloni openly disclosed his status as an HIV-carrier, alleging that Defendant Mataloni

---

[7] Smart's complaint outlines numerous allegations of intentional and retaliatory conduct on the part of the Commonwealth Defendants. He represents that, *inter alia*, he was threatened by certain Commonwealth Defendants; the Department violated the policies with respect to treatment of his grievance; he required treatment and medication because of the "cruel and deliberate action[s]" of the Commonwealth Defendants; he had a mental breakdown because of verbal attacks; he was subjected to "unwarranted punitive segregation"; the Commonwealth Defendants placed his safety and security

> continued . . . to threaten [Smart] with refusal of medical care claiming that the [Commonwealth] is broke and therefore can not [sic] pay for [his] HIV antiviral medications and that everyone would have found out who has HIV anyway because [they] would all have to be loaded up on a bus and transferred to [SCI-Graterford] and got [sic] to Temple University since Temple would now be paying for all HIV medications.

(Complaint, at ¶29.) Smart represented that "[i]nmates in the neighboring cell[,] which is less than two feet away[,] heard everything that was said to [Smart] by [ ] Defendant [Mataloni]." (*Id.* at ¶30.)

Smart argues that the "medical-professional liability" exception to sovereign immunity should apply. 42 Pa.C.S. §8522(b)(2). This exception provides that "[a]cts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel" may result in the imposition of liability on the Commonwealth. *Id.*

Because the complaint alleges that Defendant Mataloni, an alleged healthcare employee of the Department, improperly disclosed Smart's HIV status, we must consider the applicability of sovereign immunity—and the medical-professional liability exception—as to Defendant Mataloni separately from its applicability to the other Commonwealth Defendants. First, neither Defendant Brittain nor Defendant Delbalso is a "doctor, dentist, nurse or related health care personnel" and cannot, by definition, be subject to this exception. 42 Pa.C.S. §8522(b)(2).

---

in jeopardy; and he "has been forced and obligated to suffer severe and ongoing mental distress, emotional distress, mental anguish, embarrassment and humiliation and will continue to suffer the same for an indefinite time in the future to his great detriment and loss." (Complaint, at ¶¶29-192.)

9

Next, with respect to the Department and Defendants Golubieski and Taylor, both of whom are nurses, we must conclude that the medical-professional liability exception is inapplicable because those Defendants did not engage in the at-issue conduct—namely, the disclosure of Smart's status as an HIV-carrier. Rather, it was Mr. O'Brien, a Correct Care Defendant (not a Commonwealth Defendant), and Defendant Mataloni, the healthcare coordinator at SCI-Retreat, that allegedly made the improper disclosure.[8] Because the exception is to be narrowly construed, we decline to extend waiver of sovereign immunity to an act performed by a third party. The express language of section 8522(b)(2) itself provides that the exception applies to "[act]s of health care employees" of the Commonwealth. Here, neither Defendant Golubieski nor Defendant Taylor are alleged to have engaged in the "act" of disclosing Smart's personal medical information. Furthermore, Smart does not allege that the actions of either Mr. O'Brien or Defendant Mataloni should be imputed upon Defendants Golubieski and Taylor. As such, we conclude that the trial court did not err in determining that the medical-professional liability exception to sovereign

---

[8] We also note that the trial court properly disposed of Smart's breach of implied contract claim, wherein he attempted to assert that Mr. O'Brien breached an implied contract between the Department and Correct Care. It is undisputed that it was Mr. O'Brien, an employee of Correct Care, who allegedly made the improper disclosure. Correct Care is the contracted healthcare provider of SCI-Retreat. However, in his complaint, Smart did not identify a contract existing between the Department and Correct Care, and he did not allege that he is a third-party beneficiary of any such contract. To support its analysis, the trial court cited *Battle v. Prison Health Services, Inc.*, (Pa. Super., No. 1864 WDA 2013, Feb. 24, 2015), which included a discussion of our Supreme Court's decision in *Spires v. Hanover Fire Insurance Co.*, 70 A.2d 828 (Pa. 1950).

Importantly, both Mr. O'Brien and Correct Care were named as defendants in the underlying proceeding, and the trial court did not strike the breach of doctor/patient confidentiality claim with respect to the Correct Care Defendants.

immunity did not apply to the Department, Defendant Golubieski, Defendant Taylor, Defendant Delbalso, and Defendant Brittain.[9]

Our analysis is different with respect to Defendant Mataloni. As the health care administrator of SCI-Retreat, it can be argued that he is a "health care professional" falling under the medical-professional liability exception. Furthermore, Smart contends that Defendant Mataloni intentionally disclosed his status as an HIV-carrier. Accepting this allegation as true, which we are required to do when ruling on preliminary objections, we must conclude that the trial court erred in failing to consider whether Defendant Mataloni fell under the medical-professional liability exception of section 8522(b) and, accordingly, waived protection under the doctrine of sovereign immunity. We will remand this issue to the trial court for consideration.

Having remanded the matter with respect to Defendant Mataloni on the matter of the disclosure of Smart's private patient information, the Court will now consider Smart's remaining arguments with respect to sovereign immunity as applied to the Commonwealth Defendants' alleged retaliatory acts. Smart contends that the Commonwealth Defendants should not be granted sovereign immunity because their alleged retaliatory conduct fell outside of their scope of employment. We find this argument to be without merit. Conduct of an employee is within the scope of employment if it is the kind and nature the employee is employed to perform, occurs substantially within the authorized time and space limitations, and is actuated at least in part to serve the employer. *Flagg v. International Union, Security, Police, Fire Professionals of America, Local 506*, 146 A.3d 300, 309 (Pa. Cmwlth. 2016). Smart's

---

[9] Because we concluded that no exception to sovereign immunity applies with respect to the Commonwealth Defendants, it is not necessary for us to address Smart's argument that damages would have been recoverable under common law if the Commonwealth Defendants were not protected by sovereign immunity.

11

complaint is devoid of any factual allegations to suggest that any of the Commonwealth Defendants engaged in conduct while "off duty" or outside their obligations as employees of SCI-Retreat. Instead, the complaint suggests that any purported actions occurred while serving in their respective roles as Commonwealth employees.[10]

Finally, as discussed below, Smart alleges that the doctrine of sovereign immunity does not apply because the Commonwealth Defendants engaged in intentional and malicious conduct against him. With respect to this claim, the trial court interpreted Smart's claim regarding his medical treatment as a constitutional challenge, and we agree with its analysis.

Article I, section 13 of the Pennsylvania Constitution protects an inmate from cruel and unusual punishment. Pa. Const. art. I, §13. However, Smart failed to plead any valid cause of action for violation of Article I, section 13 of the Pennsylvania Constitution.

In *Hoffman v. Makhoul* (Pa. Cmwlth., No. 1674 C.D. 2017, filed May 5, 2017) (unreported), we explained:

> Article I, Section 13 of the Pennsylvania Constitution provides no greater or different protection to prisoners than the Eighth Amendment to the United States Constitution, and any claim under Article I, Section 13 concerning prisoner medical treatment or safety requires the same showing of deliberate indifference as under the Eighth Amendment. Because [p]laintiff alleged only a disagreement with the adequacy of treatment that is insufficient to state a claim of an Eighth Amendment violation, his allegations equally

---

[10] If Smart wished to assert a First Amendment retaliation claim against any or all of the Commonwealth Defendants, the complaint needed to assert sufficient facts to show that (1) he engaged in constitutionally protected conduct; (2) the retaliation against that conduct resulted in adverse action; (3) the constitutionally protected conduct was a substantial or motivating factor for the retaliation; and (4) the retaliatory action did not further a legitimate penological goal. *Yount v. Department of Corrections*, 966 A.2d 1115, 1120-21 (Pa. 2009).

> failed to state a claim for violation of Article I, Section 13 of the Pennsylvania Constitution.

*Hoffman*, slip op. at 3 (internal citations omitted); *see also Jochen v. Horn*, 727 A.2d 645, 649 (Pa. Cmwlth. 1999) ("The guarantee against cruel and unusual punishment contained in the Pennsylvania Constitution provides no greater protections than that afforded under the Eighth Amendment to the United States Constitution.").

This rationale is supported by the Third Circuit's decision in *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004):

> We have on several occasions discussed the conditions under which deprivation of medical treatment violates a prisoner's Eighth Amendment right not to be subjected to cruel and unusual punishment. "Only 'unnecessary and wanton infliction of pain' or 'deliberate indifference to the serious medical needs' of prisoners are sufficiently egregious to rise to the level of a constitutional violation." Allegations of medical malpractice are not sufficient to establish a Constitutional violation. "[M]ere disagreement as to the proper medical treatment" is also insufficient.

372 F.3d at 235 (internal citations omitted).

Smart alleges, *inter alia*, that (1) Mr. O'Brien disclosed his HIV-positive status to other inmates; (2) after commencing the grievance process, Defendant Mataloni threatened and intimidated him in an attempt to have him withdraw the grievance, and openly discussed his HIV-positive status in the presence of other inmates; and (3) the Commonwealth Defendants attempted to cover up the disclosure of Mr. O'Brien. However, Smart failed to allege that the Commonwealth Defendants knew of and disregarded an excessive risk to his health or safety. *See Jochen*, 727 A.2d at 649 ("In order to establish that [the Department] was deliberately indifferent to [an

inmate's] health and safety, [the inmate] must, at a minimum, allege that [the Department] knew of and disregarded an excessive risk to [his] health or safety.").

**Negligence and Negligent Infliction of Emotional Distress**

Smart next argues that the trial court erred in dismissing his claim for negligence and the negligent infliction of emotional distress (Count VI). In support of this argument, Smart asserts that he suffered emotional distress after Mr. O'Brien disclosed his HIV-positive status to other inmates, and had to be placed on medication. (Complaint, at ¶176.) Specifically, Smart asserts that he was subjected to "mental torture, threats, [and] mental and emotional distress" which caused his "mental stability code" to be decreased from an "A" to a "C." (Complaint, at ¶182.)

The trial court dismissed Smart's claim for the negligent infliction of emotional distress for failure to state a claim. In *Doe v. Philadelphia Community Health Alternatives AIDS Task Force*, 745 A.2d 25 (Pa. Super. 2000), the Pennsylvania Superior Court explained:

> In Pennsylvania, the cause of action for negligent infliction of emotional distress has been limited by court decisions. In order to recover, the [p]laintiff must prove one of four elements: (1) that the [d]efendant had a contractual or fiduciary duty toward him; (2) that [p]laintiff suffered a physical impact; (3) that [p]laintiff was in a "zone of danger" and at risk of an immediate physical injury; or (4) that [p]laintiff had a contemporaneous perception of tortious injury to a close relative. In all cases, a [p]laintiff who alleges negligent infliction of emotional distress must suffer immediate and substantial physical harm.

745 A.2d at 27-28.

14

While Smart asserted that, because of Mr. O'Brien's disclosure and the subsequent retaliatory conduct of the Commonwealth Defendants, he suffered stress, needed to be prescribed medications, and suffered a mental breakdown, he failed to allege any physical impairments or injuries due to the disclosure. Accordingly, the trial court did not err in finding that Smart failed to state a claim for the negligent infliction of emotional distress because his complaint did not include any allegations of "immediate and substantial physical harm."

We must acknowledge Smart's argument that he was not given an opportunity to amend his complaint to successfully raise a claim for the negligent infliction of emotional distress. Rule 1033(a) of the Pennsylvania Rules of Civil Procedure governs the amendment of a complaint, providing that "[a] party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading." Pa.R.C.P. No. 1033(a). Our Supreme Court has held that a court is not required to *sua sponte* order or require a party to amend his pleading. *Werner v. Zazyczny*, 681 A.2d 1331, 1338 (Pa. 1996). In this case, the record reveals that Smart did not request leave to amend his complaint. Therefore, we cannot find that the trial court erred in dismissing Smart's claim without affording him the opportunity to amend his complaint.

**Certificates of Merit**

Smart next asserts that the trial court erred in striking his certificates of merit, which were filed with respect to Counts I (breach of doctor/patient confidentiality), II (medical negligence), and VI (negligent infliction of mental and emotional distress) of the complaint, and in entering a judgment of *non pros* in favor

15

of the Correct Care Defendants. Smart alleges that expert testimony is not required with respect to those counts because a standard of care was not at issue. Alternatively, he contends that even if expert testimony was needed, he could not afford to employ expert witnesses in his case. In response, the Correct Care Defendants argue that Smart waived his right to raise this issue on appeal because he did not file a petition to open the judgment with the trial court. We must agree.

Rule 3051 of the Pennsylvania Rules of Civil Procedure provides that "relief from a judgment of *non pros* shall be sought by petition." Pa.R.C.P. No. 3051. The promulgation of Rule 3051 superseded the prior rule, established by relevant case law, that allowed a party to seek review of a judgment of *non pros* by either petitioning the trial court to open the judgment, or seeking appellate review of the judgment.[11] *Sahutsky v. H.H. Knoebel Sons*, 782 A.2d 996, 989 (Pa. 2001) (hereinafter, *Knoebel*).

It is well-settled under Pennsylvania law that issues not raised before the lower court through post-trial motions are waived on appeal to a higher court. *Knoebel*, 782 A.2d at 1000. "A Rule 3051 petition to open serves the same function as a post-trial motion. Both filings exist to afford the [trial court] an opportunity to correct alleged errors before an appeal is pursued." *Id.* Because Rule 3051 "*mandates* the filing of the petition in the trial court," we must conclude that Smart's failure to file a petition to open the judgment of *non pros* with the trial court precludes him from raising any issue related to the judgment of *non pros* on appeal to this Court.[12]

---

[11] Rule 3051 of the Pennsylvania Rules of Civil Procedure became effective on January 1, 1992.

[12] The Supreme Court, in its *Knoebel* decision, also noted that it will not excuse non-compliance with Rule 3051 when the parties made no attempt to conform with the rule. *Knoebel*, 782 A.2d at 1001. The same holds true in the case before this Court, as Smart made no attempt to comply with the requirements of Rule 3051.

Even if we were to determine that Smart did not waive this issue on appeal, we find that expert testimony would be required in this case. Under Rule 1042.3(a) of the Pennsylvania Rules of Civil Procedure:

> In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
>
> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa.R.C.P. No. 1042.3(a).

While merely filing suit against a professional does not require a certificate of merit, a suit against a professional *for violation of a professional standard* does. *Ferencz v. Medlock*, 905 F. Supp. 2d 656, 673 (W.D. Pa. 2012). Pennsylvania courts have declined to apply Rule 1042.3 to claims sounding in ordinary negligence or intentional torts. *See, e.g., Merlini v. Gallitzin Water Authority*, 934 A.2d 100, 107

17

(Pa. Super. 2007) (finding that a certificate of merit was not required because plaintiff's claims involved ordinary, rather than professional, negligence).

In this case, Smart alleges that the Correct Care Defendants were negligent with respect to Mr. O'Brien's disclosure of his HIV status. Smart incorrectly argues that such a determination does not involve a standard of care; rather, his claim amounts to a medical malpractice action. Smart asserts that Mr. O'Brien negligently disclosed his status as an HIV-carrier. It is clear that the alleged disclosure occurred within a professional relationship, as Mr. O'Brien was acting in his role as a physician's assistant employed by Correct Care at the time the statement was made. We also find that Smart's allegations involve a medical judgment not within the scope of knowledge of a layperson. That is, a layperson would not be able to determine when O'Brien deviated from an acceptable professional standard when he made the disclosure. Thus, because Smart's claim is in the nature of a medical malpractice claim, expert testimony was, in fact, required in his case, and proper certificates of merit needed to be filed.

## Waiver of Right to Appear

Smart also argues that the trial court erred in concluding that he waived his right to appear for argument when he neither signed a waiver, nor received instructions to arrange for his appearance at the hearing. Smart acknowledges that he received notice of the February 6, 2017 hearing to consider the Correct Care Defendants' motion to strike the certificates of merit and for judgment of *non pros*. (Appellant's brief, at 8.) He also represents that he sent a letter to the trial court, explaining that, due to his incarceration, he could not appear at the hearing without a court order. *Id.*

18

The trial court addressed Smart's letter and non-appearance at the February 6 hearing on two separate occasions. First, on the record at the February 6 hearing, the trial court explained;

> [Smart] wrote a letter indicating he would not be able to be here but did not request to be here. There was no request made to be here, nor was he looking to make arrangements to be here. Therefore, we were—the hearing was to proceed regardless of [Smart's] attendance. And we did speak to our court administration and I did verify that he is incarcerated. He did not make a request for it to be done on video or in any other manner; therefore, we would proceed with this argument for today's purposes.

(O.R. at Item No. 73; N.T., 2/6/17, at 3.) Next, at the June 15 2017 status conference, Smart, who appeared via video, discussed the issue regarding his inability to appear at the February 6, 2017 hearing with the trial court:

> THE COURT: I will note that the Court Administrator received the documentation with regard to this. It was sent directly to Court Administration. At that time Court Administration indicated that they [sic] do not do transports or schedule videos and that, ultimately, that any arrangements to be transferred here is upon the responsibility of the [p]laintiff in a civil filing. And that if you wanted to come, you would have to make the necessary arrangements through Court Orders and payment of transfer costs— transport costs.
>
> That information was sent and provided to us, because this was listed on a regular miscellaneous list, along with your correspondence. And it was forwarded to—Court Administration thereafter provided that information to the Court as to any and all scheduling with regard to this matter.
>
> So, ultimately, although there was no oral argument requested in this matter, the Court did, in fact, take oral argument. And that there is no appointment of counsel in

19

civil matters. Civil matters there is no right to counsel. Criminal matters you have a right to counsel, but in civil matters there is no authority for the Court—and that was assigned to motions court. There was no authority of the Court at that juncture to appoint counsel to represent you. And, therefore, any and all need [sic] to appear for the hearing has to be done by a [p]laintiff.

And I understand that you are incarcerated, sir. The issue has come up previously on numerous occasions. I scheduled this hearing for a scheduling conference today, and it was scheduled by the Court. Obviously, we scheduled it so that we could determine where we're at with the remaining parties. That was the purpose. And I was able to arrange for the video conference since it was being specifically scheduled by me in this matter.

That is what occurred as of February 6th. When it was assigned to motions court, that was the first inquiry as to what the status would be for a [p]laintiff who is incarcerated. They said the [p]laintiff needs to make those accommodations in one form or another to be present.

MR. SMART: Your Honor, I never had any type of notice to set up the format of via video conference. I knew nothing about video conference until Your Honor just last month instructed the Prothonotary to give such an order to me to appear at this hearing.

THE COURT: Well, no, it didn't go to the Prothonotary. The letter you sent on December 15th references that you were aware that the hearing was scheduled for February 6th and that you would be unable to attend. And that's the letter that the Luzerne County Court Administration provided with regard to those matters.

MR. SMART: But unable to attend—and I would like to put—for the record, Your Honor, I would like to participate in my case—after everything that I've been through, I would like to participate in my case every step of the way as best I can.

20

THE COURT: So if you're filing—if you're filing a motion or an order for a motion, then it's—you have to file a motion in order to request that you be available by video and that those accommodations be taken care of.

If you want to come in person, then you have to file a motion, and then because you're a [p]laintiff, then you would have to, again, take care of all the arrangements once there's a Court Order to be transported to appear in person. For trial, obviously, that's a requirement that you're here for trial.

MR. SMART: Your Honor, I didn't know the rules that I would have to schedule a hearing by video conference or being brought down until Your Honor just instructed me last month. That's when I first heard about it, and that's why I'm kind of stunned that I had missed my last hearing.

THE COURT: Well, it's the [p]laintiff's responsibility, sir, to be here. If a [p]laintiff asks the Court for a hearing, then the [p]laintiff has to be here. . . . Ultimately, the—you were aware of the hearing date and you were—and your letter clearly shows you were made aware of the date and time. Therefore, the responsibility is on the [p]laintiff.

(O.R. at Item No. 77; N.T., 6/15/17, at 6-10.)

The trial court acknowledged that Smart sent a letter to the court administration, notifying it of his inability to appear at the February 6, 2017 hearing. However, Smart's letter did not expressly request assistance from the court in appearing by video at the hearing. Furthermore, as the trial court explained to him on June 15, 2017, the burden to arrange to appear at a civil hearing appears to be held by Smart, the plaintiff in this case.

Nonetheless, pursuant to our Supreme Court's decision in *Knoebel*, it is irrelevant whether it was Smart or the trial court who had the obligation to set up a video conference. As explained above, under *Knoebel*, the "failure to file a Rule 3051

21

petition operates as a waiver of any claims of error concerning the judgment of *non pros* entered by the [trial court]." 782 A.2d at 1000.

Therefore, because Smart did not raise the issue of his failure to appear at the February 6, 2017 hearing in a petition for relief from the judgment of *non pros*, he is precluded from raising that issue in this appeal.

**Failure to Conduct a Hearing to Consider Preliminary Objections**

Finally, we briefly address Smart's argument that the trial court erred in ruling upon the Commonwealth Defendants' preliminary objections without first conducting a hearing. We do not agree with his argument.

In *Chester Upland School District v. Yesavage*, we explained:

> It is clear that with respect to those preliminary objections which may be determined from the facts of record, no response by the opposing party is required or permitted. The right to plead over and file a responsive pleading to preliminary objections exists only where the preliminary objections aver facts and where the preliminary objections have been duly endorsed with a notice to plead.

653 A.2d 1319, 1325 (Pa. Cmwlth. 1993).

Here, the preliminary objections filed by the Commonwealth Defendants asserted no facts outside the record and created no factual discrepancies. Thus, the trial court was not required to conduct a hearing to take new evidence before issuing its determination regarding the preliminary objections.

**Conclusion**

22

Based upon the foregoing analyses, we conclude that the trial court did not err in sustaining the Commonwealth Defendants' preliminary objections and dismissing Smart's complaint with respect to those Defendants, as the Commonwealth Defendants are immune from liability in this matter pursuant to Pennsylvania's Sovereign Immunity Act. However, we conclude that the trial court did err in sustaining Defendant Mataloni's preliminary objections without considering whether Defendant Mataloni, in light of his conduct, waived sovereign immunity under the medical-professional liability exception.

We also hold that the trial court did not err in issuing its determination without conducting a hearing. With respect to the Correct Care Defendants, we find that the trial court did not err in striking Counts I, II, and VI, based upon the judgment of *non pros*. We also find that the trial court properly found that Smart waived his right to appear at that hearing based upon his admission that he received notice of the hearing date and his subsequent failure to appear.

As such, the trial court's March 30, 2017 order is vacated in part, and affirmed in part. The order is vacated to the extent that it sustains Defendant Mataloni's preliminary objections and dismisses Smart's complaint with respect to him. The order is affirmed in all other respects. With respect to Defendant Mataloni's preliminary objections, the matter is remanded to the trial court to issue a new order and opinion, addressing whether Defendant Mataloni waived sovereign immunity in light of the medical-professional liability exception, consistent with this opinion.

_____
PATRICIA A. McCULLOUGH, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Quinterio Smart, | : | |
|         Appellant | : | |
| | : | No. 631 C.D. 2017 |
|         v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Corrections; | : | |
| Donald O'Brien; Laurie Golubieski; | : | |
| Joseph Mataloni; Kathi Taylor; | : | |
| Theresa Delbalso; Kathy Brittain and | : | |
| Correct Care Solutions, P.C. | : | |

## ***ORDER***

AND NOW, this 27th day of June, 2018, the  March 30, 2017 order of the Court of Common Pleas of Luzerne County (trial court) is hereby affirmed in part and vacated and remanded in part.  The order is vacated to the extent that it sustains the preliminary objections filed by Defendant Joseph Mataloni and the matter is remanded to the trial court for the issuance of new opinion and order for the sole purpose of addressing whether Defendant Mataloni waived sovereign immunity in light of the medical-professional liability exception.  In all other respects, the trial court's order is affirmed.

Jurisdiction is relinquished.


_____
PATRICIA A. McCULLOUGH, Judge