# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Timothy R. Bonner, P. Michael Jones, David H. Zimmerman, Barry J. Jozwiak, Kathy L. Rapp, David Maloney, Barbara Gleim, Robert Brooks, Aaron J. Bernstine, Timothy F. Twardzik, Dawn W. Keefer, Dan Moul, Francis X. Ryan, and Donald "Bud" Cook,<br><br>Petitioners<br><br>v.<br><br>Leigh M. Chapman, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania, and Commonwealth of Pennsylvania, Department of State,<br><br>Respondents | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 364 M.D. 2022<br>Argued: October 12, 2022 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED: June 27, 2023

Before the Court is a challenge to the ongoing legal viability of Act 77 of 2019[1] (Act 77), which amended the Pennsylvania Election Code[2] (Election Code) to, among other things, eliminate straight-ticket voting, expand mail-in voting, and

---

[1] Act of October 31, 2019, P.L. 552, No. 77.
[2] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

provide funding to upgrade voting systems.[3]  At issue are provisions found in Sections 6 and 8 of Act 77,[4] which state, in pertinent part, that

> at any time after receiving an official . . . ballot, but on or before eight o'clock P.M. the day of the primary or election, the . . . elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "Official Election Ballot."  This envelope shall then be placed in the second one, on which is printed the form of declaration of the . . . elector, and the address of the elector's county board of election and the local election district of the elector.  **The elector shall then fill out, <u>date</u> and sign the declaration printed on such envelope.**  Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

25 P.S. §§ 3146.6(a) (absentee ballots), 3150.16(a) (mail-in ballots) (emphasis added).  More specifically at issue is whether judicial interpretations of the dating part of the above emphasized sentence (Dating Provisions), in conjunction with the Election Code and other state and federal statutes, invalidated those provisions by holding that a timely received, otherwise valid mail-in or absentee ballot of a qualified Pennsylvania elector could not be rejected or excluded from a county board of elections' certified results as a collateral consequence of the elector not having a handwritten date on a declaration contained on the ballot's return mailing envelope.[5]

---

[3] *See McLinko v. Dep't of State*, 279 A.3d 539, 543 (Pa. 2022) (*McLinko II*).

[4] Sections 6 and 8 of Act 77 address absentee and mail-in ballots and, relevantly, amended Section 1306, added by Section 11 of the Act of March 6, 1951, P.L. 3, 25 P.S. § 3146.6 (absentee ballots), and added Section 1306-D to the Election Code, 25 P.S. § 3150.16(a) (mail-in ballots).

[5] The phrase "undated ballots," which is sometimes used in these challenges, is a misnomer because it is undisputed that when an absentee or mail-in ballot is received by a county board of elections, the return mailing envelope is stamped with the date received and the barcode on that envelope is scanned into the Statewide Uniform Registry of Electors (SURE) system to reflect that **(Footnote continued on next page…)**

2

*See Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022), *pet. for cert. granted, judgment vacated by Ritter v. Migliori*, 143 S. Ct. 297 (2022)[6]; *Chapman v. Berks Cnty. Bd. of Elections* (Pa. Cmwlth., No. 355 M.D. 2022, filed Aug. 18, 2022) (Cohn Jubelirer, P.J., single-judge op.) (*Berks County*).

Petitioners,[7] who are current members of the Pennsylvania House of Representatives and bring this matter as registered Pennsylvania electors and past and future likely candidates, assert that Sections 6 and 8 of Act 77 were declared to be nonseverable by the General Assembly and that *Migliori* and/or *Berks County* "invalidated" the Dating Provisions found in those sections. Petitioners argue this invalidation triggered Section 11 of Act 77 (Nonseverability Provision), which states: "Sections 1, 2, 3, 3.2, 4, 5, 5.1, 6, 7, 8, 9 and 12 of this act are nonseverable. If any provision of this act or its application to any person or circumstance is held invalid, the remaining provisions or applications of this act are void." Section 11 of

---

receipt. That stamped date is then used to determine the timeliness of the ballot. Those ballots received by 8:00 p.m. on election day are timely, and they are canvassed and counted. 25 P.S. §§ 3146.6(c), 3150.16(c).

[6] The United States Supreme Court granted the petition for writ of certiorari in *Ritter*, which asserted that the matter in *Migliori* had become moot and that the order of the United States Court of Appeals for the Third Circuit (Third Circuit) should be vacated pursuant to *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), vacated the Third Circuit's judgment, and remanded with instructions that the Third Circuit dismiss the case as moot. *Ritter* (U.S., No. 22-30, filed Oct. 11, 2022). Under *Munsingwear*, where a civil case in the federal system becomes moot while pending on appeal, the standard disposition of the United States Supreme Court "is to reverse or vacate the judgment below with a direction to dismiss." 340 U.S. at 39-41 & n.2. This "procedure clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." *Id.* at 41. Petitioners and Respondents acknowledged at oral argument that the grant of certiorari and vacation of the judgment in *Migliori* was on procedural grounds and did not include any agreement or disagreement with the Third Circuit's reasoning, and that *Migliori*, while not binding, remained persuasive authority.

[7] Petitioners are Timothy R. Bonner, P. Michael Jones, David H. Zimmerman, Barry J. Jozwiak, Kathy L. Rapp, David Maloney, Barbara Gleim, Robert Brooks, Aaron J. Bernstine, Timothy F. Twardzik, Dawn W. Keefer, Dan Moul, Francis X. Ryan, and Donald "Bud" Cook.

Act 77. Petitioners assert that the Nonseverability Provision requires the Court to declare that Act 77 is void in its entirety. Respondents Leigh M. Chapman, in her official capacity as Acting Secretary of the Commonwealth of Pennsylvania (Secretary), and the Commonwealth of Pennsylvania, Department of State (Department), and intervenors the Democratic National Committee and Pennsylvania Democratic Party (together, DNC/PDP), and the Democratic Senatorial Campaign Committee and Democratic Congressional Campaign Committee (together, Committees) (collectively, Intervenor Respondents), argue that Petitioners' claims of invalidation and nonseverability are without legal merit and that Petitioners lack standing and are barred from bringing this action.

Presently before the Court are Petitioners' Application for Summary Relief (Petitioners' Application), the separate Cross-Applications for Summary Relief (Cross-Applications) filed by Respondents and Intervenor Respondents, and the separate preliminary objections (POs) filed by those groups, which assert the same bases for relief as in their Cross-Applications. Each party asserts they have established a clear right to relief and are entitled to judgment as a matter of law on their respective positions as to the ongoing viability of Act 77, and that the opposing parties' contrary arguments must be rejected. However, while *Migliori* and *Berks County* interpreted the Dating Provisions, *Migliori* has been vacated by the United States Supreme Court, our Supreme Court, in *Ball v. Chapman*, 289 A.3d 1 (Pa. 2023), has weighed in on the interpretation of the Dating Provisions and Section 10101(a)(2)(B) of the Civil Rights Act of 1964[8] (commonly referred to as the

_____

[8] Section 10101(a)(2)(B) of the Civil Rights Act of 1964 provides, in relevant part, as follows:

**(Footnote continued on next page…)**

4

"Materiality Provision"), and the current state of the law does not support Petitioners' contention that they have a clear right to relief. Further, even in the absence of these intervening events, the Courts in *Migliori* and *Berks County* did not invalidate the Dating Provisions, which remain a part of the Election Code. Rather, those Courts performed their constitutional obligation to engage in statutory interpretation in resolving the matters before them. Therefore, contrary to Petitioners' arguments, the Nonseverability Provision has not been triggered to invalidate Act 77 in its entirety. Accordingly, the Court denies Petitioners' Application, grants the Cross-Applications, and dismisses the POs as moot.

## I. THE FILINGS

### A. The Petition for Review and Petitioners' Application

Petitioners have filed, in this Court's original jurisdiction, a Petition for Review in the Nature of an Action for Declaratory Judgment (Petition) pursuant to the Declaratory Judgments Act[9] (DJA). Petitioners seek a determination that the Dating Provisions of Sections 6 and 8 of Act 77 were invalidated in *Migliori* and/or *Berks County*. They maintain the United States Court of Appeals for Third Circuit

---

**(a) Race, color, or previous condition not to affect right to vote; uniform standards for voting qualifications; errors or omissions from papers; literacy tests; agreements between Attorney General and State or local authorities; definitions**

. . . .

    **(2)** No person acting under color of law shall--

. . . .

        **(B)** deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election[.]

52 U.S.C. § 10101(a)(2)(B) (emphasis in the original).

[9] 42 Pa.C.S. §§ 7531-7541.

5

(Third Circuit) in *Migliori* invalidated the Dating Provisions by precluding their use as a basis to reject timely received, otherwise valid absentee and mail-in ballots that had not included handwritten dates on the declarations as being prohibited by the Materiality Provision. Petitioners further assert that this Court, by single-judge opinion and order in *Berks County*, invalidated the Dating Provisions when it found *Migliori*'s reasoning persuasive as to the Civil Rights Act's Materiality Provision and, separately, as a matter of state law, when it held that the Dating Provisions were directory, not mandatory, and, therefore, the consequence of an elector's failure to handwrite a date on the declaration was not the rejection of a timely received mail-in or absentee ballot of a qualified Pennsylvania elector. Petitioners assert that either decision clearly implicates the Nonseverability Provision, which states "[i]f any provision of this act or its application to any person or circumstance is held invalid, the remaining provisions or applications of this act are void." Section 11 of Act 77. Under the Nonseverability Provision, Petitioners assert that Act 77, and all amendments thereto, such as Act No. 12 of 2020,[10] are now void and must be struck down in their entirety. (Petition ¶ 28.) Petitioners argue that, notwithstanding the invalidation of the Dating Provisions of Sections 6 and 8 of Act 77 and the Nonseverability Provision, the Secretary continues to implement the provisions of the Election Code enacted pursuant to the now-void Act 77 and urges compliance with the relevant judicial decisions, rather than the express language of the Dating Provisions. (*Id.* ¶¶ 29-31.) Petitioners further assert that the Nonseverability Provision reflects, and serves a key function in preserving, the compromises made by the General Assembly in enacting Act 77, which should be given effect by the Court. (Petitioners' Application at 3-4.) "Blocking the application of a mandatory

---

[10] Act of March 27, 2020, P.L. 41, No. 12.

6

provision like the [D]ating [P]rovisions [sic]" "triggers Section 11 of Act 77[,]" and, therefore, Petitioners assert that their Application should be granted and "Act 77, and all amendments thereto, including Act [N]o. 12 of 2020[,] should be declared void." (*Id.* at 8.)

### B. *The Cross-Applications and POs*

In their Cross-Applications and POs,[11] Respondents and Intervenor Respondents assert that Petitioners have failed to state a claim, and that Respondents, not Petitioners, have established a clear right to legal relief in their favor because Petitioners' claims fail as a matter of law for multiple reasons. They argue that Petitioners failed to establish that they have standing to bring this challenge to the ongoing viability of Act 77. Respondents and Intervenor Respondents further contend Petitioners failed to exercise due diligence and simply waited too long to file the Petition, without a valid excuse and to Respondents' prejudice, and, therefore, Petitioners' claims are barred by the equitable doctrine of laches. On the merits of Petitioners' invalidation and nonseverability claims, Respondents and Intervenor Respondents assert the Dating Provisions were not invalidated by the courts in *Migliori* and *Berks County*, which represented judicial interpretations, not invalidations, of those provisions in relation to the Election Code and the Civil Rights Act, and that, even if an invalidation occurred, the Nonseverability Provision is unenforceable under these circumstances. Intervenor Respondents last argue that enforcing the Nonseverability Provision, and voiding Act 77's expansion of mail-in voting, would violate the Free and Equal Elections Clause of the Pennsylvania

---

[11] Intervenor Respondents join and incorporate the others' Cross-Applications and POs, as well as Respondents' Cross-Application and/or POs. (DNC/PDP Cross-Application ¶¶ 2-3; Committees' Cross-Application at 2 n.1.)

Constitution,[12] PA. CONST. art. I, § 5, by disenfranchising voters who have come to rely on mail-in voting.

The parties have filed answers and briefs in support of and in response to the others' dispositive filings. After hearing oral argument, at which the parties focused their arguments on the merits of the invalidation and nonseverability claims and whether the Petition was barred by laches, Petitioners' Application and the Cross-Applications and POs are ready for disposition.

## II. DISCUSSION

### A. Legal Principles for Declaratory Relief, POs, and Summary Relief

Petitioners request summary relief on their declaratory judgment action filed under the DJA, and Respondents and Intervenor Respondents assert POs and seek summary relief in opposition to Petitioners' claims. The Court reviews these different forms of relief using the following legal standards.

Petitions for declaratory judgment are governed by the provisions of the DJA, which are broad in scope and are to be liberally construed and administered. *Ronald H. Clark, Inc. v. Township of Hamilton*, 562 A.2d 965, 967 (Pa. Cmwlth. 1989). Requests for declaratory relief are intended to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." 42 Pa.C.S. § 7541. Declaratory judgments are not obtainable as a matter of right. *Ronald H. Clark, Inc.*, 562 A.2d at 968-69. Rather, whether a court exercises jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion. *Id.* at 969.

---

[12] The Free and Equal Elections Clause provides: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." PA. CONST. art. I, § 5.

8

Pennsylvania Rule of Appellate Procedure 1532(b) provides that "[a]t any time after the filing of a petition for review in an . . . original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b). "[I]n ruling on a motion for summary relief, the evidence must be viewed in the light most favorable to the non-moving party and the court may enter judgment only if: (1) there are no genuine issues of material fact; and (2) the right to relief is clear as a matter of law." *Flagg v. Int'l Union, Sec., Police, Fire Pros. of Am., Loc. 506*, 146 A.3d 300, 305 (Pa. Cmwlth. 2016). This right to relief "may be granted only in cases where the right is clear and free from doubt." *O'Rourke v. Pa. Dep't of Corr.*, 730 A.2d 1039, 1041 (Pa. Cmwlth. 1999).

Preliminary objections are deemed to admit all well-pled material facts and any inferences reasonably deduced therefrom. *Scarnati v. Dep't of Env't Prot.*, 220 A.3d 723, 278 (Pa. Cmwlth. 2019). Courts are not, however, bound by any legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion within a petition for review. *Id.* Similar to the grant of summary relief, "[i]n order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and, where any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections." *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006).

Thus, for Petitioners to prevail on their Application, they must establish that their right to relief, an order declaring that the Dating Provisions of Sections 6 and 8 of Act 77 were invalidated by *Migliori* and/or *Berks County* and that Act 77 is void in its entirety as a result, is clear as a matter of law. *Flagg*, 146 A.3d at 305. In

9

contrast, to prevail on their Cross-Applications and/or POs, Respondents and Intervenor Respondents must establish that the law will not permit Petitioners to recover on the Petition and that their right to relief, the dismissal of the Petition, is clear as a matter of law. *Id.* With these standards in mind, we begin with determining whether Respondents and Intervenor Respondents have met their burdens of proof on their claims that Petitioners lack standing and the Petition is barred by laches.

### B. Whether Petitioners Lack Standing

The first challenge to the Petition and basis for granting summary relief in Respondents' and Intervenor Respondents' favor is their contention that Petitioners lack standing to enforce the Nonseverability Provision. In addition to arguing that the Petition fails to adequately plead the facts necessary to establish standing, Respondents and Intervenor Respondents assert that Petitioners' averred status as registered Pennsylvania electors and "past and likely future candidates for office," (Petition ¶ 23), are insufficient as a matter of law. They argue these asserted interests are the same as the "abstract interest of all citizens in having others comply with the law," which is insufficient to confer standing under *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 282 (Pa. 1975). Respondents and Intervenor Respondents further assert that Petitioners have failed to aver that they have the substantial, particularized, nonspeculative injury needed to have standing.

Petitioners respond that they have standing to challenge Act 77's continued validity because they "have substantial, direct and immediate interests in whether . . . Respondents are permitted to continue to enforce and administer a law . . . that has become void by its own terms," and their "interests are distinguishable from the interests shared by all other citizens" as Petitioners are past and likely future

candidates for office and are registered electors. (Petitioners' Answer to Respondents' Cross-Application for Summary Relief and POs at 3-4.) As registered electors, Petitioners claim they will suffer from vote dilution in every election in which improper ballots are counted. As candidates, Petitioners assert they suffer harm from having their elections impacted by ballots that do not meet the requirements of the applicable law and by having to spend campaign funds to adapt their campaigns to comply with a now-void Act 77.

Standing to bring an action is a threshold matter. *Markham v. Wolf*, 136 A.3d 134, 140 (Pa. 2016). To grant either a PO or summary relief on this basis, requires that the right to relief be **clear** as a matter of law, *Flagg*, 146 A.3d at 305, that the matter is **free from doubt**, *O'Rourke*, 730 A.2d at 1041, and that if any doubt exists, it must be resolved in favor of denying the POs or summary relief, *Pennsylvania State Lodge*, 909 A.2d at 416 (POs); *Pennsylvania Protection and Advocacy, Inc. v. Department of Education*, 609 A.2d 909, 911 (Pa. Cmwlth. 1992) (summary relief). Reviewing the Petition and the parties' arguments, we conclude it is not sufficiently clear and free from doubt that Petitioners' lack standing so as to grant the Cross-Applications and/or sustain the POs on this basis.

To have standing, a litigant must be aggrieved which requires the litigant to have a "substantial, direct, and immediate interest in the matter." *Markham*, 136 A.3d at 140. A substantial interest is a "concern in the outcome of the challenge [that] must surpass 'the common interest of all citizens in procuring obedience to the law.'" *Id.* (quoting *In re Hickson*, 821 A.2d 1238, 1243 (Pa. 2003)). "[T]here must be some discernable adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." *Wm. Penn Parking Garage, Inc.*, 346 A.2d at 282. An interest is "direct" if the litigant "demonstrate[s] that the

11

matter caused harm to the party's interest," and is immediate "if [the] causal connection is not remote or speculative." *Id.*

Whether Petitioners' status as past and likely future candidates and the impact on their campaigns for reelection based on the ongoing implementation of the allegedly void Act 77 provide the needed interest and particularized injury for standing is a close question. Initially, we observe that the pleadings reflect that only one of the Petitioners, Francis X. Ryan, was not seeking reelection to his seat in the Pennsylvania House of Representatives. Thus, Ryan's assertion of standing is based only on being a registered elector and the allegation of harm by vote dilution. However, the Supreme Court, in *Ball*, rejected the vote dilution theory as sufficient to grant standing to registered electors, and dismissed the voter petitioners from that case. 289 A.3d at 20; *see also Ball v. Chapman*, 284 A.3d 1189 (Pa. 2022) (order that, *inter alia*, dismissed the voter petitioners as parties based on their lack of standing). Because Ryan's basis for standing was rejected by the Supreme Court in *Ball*, we must conclude that Ryan does not have standing, grant Respondents summary relief as to him, and dismiss him from this matter.

As to the other Petitioners, they were seeking reelection. Therefore, we will not find a lack of standing based merely on their use of the phrase "likely future candidates for office." (Petition ¶ 23 & n.1.) Petitioners have asserted that they, and their campaigns, suffer harm because they will have to adapt, and expend funds, to account for the continued application of Act 77, which could be viewed as having a discernable adverse effect on Petitioners different than that experienced by the citizenry or electorate at large. As stated, "when the asserted harm is . . . shared in substantially **equal measure** by . . . **a large class of citizens**," it is not a particularized injury. *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (emphasis added).

12

Unlike the class of registered electors, which is large, it is not apparent to the Court that the class of candidates for office is a similarly large class of citizens such that Petitioners' interest is indistinguishable from the citizenry at large. Moreover, it is similarly unclear to the Court that the "asserted harm is . . . shared in substantially equal measure," *id.*, by a large class of citizens so as to preclude a finding that Petitioners have asserted a particularized injury. Given the high standard for establishing an entitlement to summary relief and to sustain a PO, which requires that such relief be clear and free from doubt, the Court is not persuaded that Respondents and Intervenor Respondents have met that high standard and will not grant relief on this basis, except as to Francis X. Ryan.

### C. Whether Petitioners' Claims are Barred by Laches

The Court now turns to the contentions that the Petition must be dismissed and/or summary relief granted to Respondents and Intervenor Respondents because the claims set forth therein are barred by the equitable doctrine of laches. Respondents and Intervenor Respondents assert that Petitioners seek relief under the Nonseverability Provision based on the contention that the Courts in *Migliori* and *Berks County* invalidated the Dating Provisions by holding they could not be used to reject absentee and mail-in ballots accompanied by declarations that lacked a handwritten date. Respondents and Intervenor Respondents maintain that there were numerous other court decisions that reached the same or similar results as early as November 2020,[13] including *In re Canvass of Absentee and Mail-In Ballots of*

---

[13] The Committees cite the following: *Benezet Consulting, LLC v. Boockvar*, 433 F. Supp. 3d 670, 689 (M.D. Pa. 2022); *In re Canvass of Absentee and/or Mail-In Ballots of November 3, 2020 General Election* (Bucks C.C.P., No. 20-05-05786-35, filed Nov. 19, 2020), at *8-11; *Ziccarelli v. Allegheny County Board of Elections* (Allegheny C.C.P., No. GD-20-011654, filed Nov. 18, 2020); *In re Canvass Absentee and Mail-In Ballots of November 3, 2020 General Election* **(Footnote continued on next page…)**

13

*November 3, 2020 General Election*, 241 A.3d 1058, 1076 (Pa. 2020) (plurality) (*In re Canvass*), which, under Petitioners' theory, should have triggered the Nonseverability Provision. Respondents and Intervenor Respondents argue that Petitioners failed to exercise due diligence and inexcusably waited almost two years to claim that Act 77 is void under the Nonseverability Provision, which has resulted in substantial prejudice to Respondents. Respondents argue that voiding Act 77 now would require reeducating millions of voters and could disenfranchise untold numbers, who have come to rely on this alternative means of voting for the past five election cycles. Respondents and Intervenor Respondents further assert that significant funds have been expended in those two years to educate electors about Act 77 and to implement Act 77's provisions.

Petitioners assert that the heavy burden of proving a laches claim was not met here because they are not guilty of a want of due diligence and *In re Canvass* did not trigger the Nonseverability Provision. Petitioners maintain that *Migliori* was the first instance where the Dating Provisions were effectively held to be invalid and could not be used to reject absentee and mail-in ballots, thereby triggering the Nonseverability Provision. Finally, Petitioners argue that there is no prejudice because: they seek only prospective relief – meaning no Pennsylvania elector would be disenfranchised; there is no reason to believe that electors would not understand that they have to return to voting in person; and the funds asserted to have been spent educating electors about Act 77 and implementing Act 77 were not wasted because

(Phila. C.C.P., No. 201100874, filed Nov. 13, 2020); *Donald J. Trump for President, Inc. v. Montgomery County Board of Elections* (Montgomery C.C.P., No. 2020-18680, filed Nov. 13, 2020). Petitioners note that *Benezet Consulting LLC* was vacated by *Benezet Consulting LLC v. Secretary of Commonwealth*, 26 F.4th 580 (3d Cir. 2022). However, while the district court's order was vacated, the Third Circuit upheld the district court's legal conclusion but limited the relief granted and, accordingly, remanded with directions to implement the more limited relief. *Id.* at 587.

they were actually used in connection with past elections where mail-in voting occurred.

Laches is an equitable doctrine that "bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute [an] action to the prejudice of another." *Sprague v. Casey*, 550 A.2d 184, 187 (Pa. 1988). To prevail on the assertion of laches, it must be established that there was an inexcusable delay arising from Petitioners' failure to exercise due diligence, and prejudice to the party asserting laches resulted from the delay. *Id.*; *Meier v. Maleski*, 648 A.2d 595, 603 (Pa. Cmwlth. 1994). Prejudice may "be found where a change in the condition or relation of the parties occur[s] during the time the complaining party failed to act." *Koter v. Cosgrove*, 844 A.2d 29, 34 (Pa. Cmwlth. 2004). "[T]he question of laches is factual and is determined by examining the circumstances of each case." *Sprague*, 550 A.2d at 187.

Upon review, the Court is not persuaded that Respondents and Intervenor Respondents have so clearly established a valid claim of laches so as to grant them relief on this basis. Initially, the Court agrees with Petitioners that the Pennsylvania Supreme Court's decision in *In re Canvass* does not support a finding of laches in this matter. In addition to *In re Canvass* being a plurality decision, the Supreme Court has, ultimately, clarified in *Ball* that there was a majority of justices who concluded in *In re Canvass* that the Election Code was unambiguous and mandatory and undated ballots should not be counted after 2020. *Ball*, 289 A.3d at 20-22. Further, although there may have been other judicial decisions directing the counting of absentee and mail-in ballots that lacked a handwritten date on the declaration, it was not until May 24, 2022, four days after the Third Circuit's entry of judgment in *Migliori*, that Respondents changed their guidance to county boards of elections to

15

canvass and count absentee and mail-in ballots that were sent in return mailing envelopes that lacked a handwritten date on the declaration in the May 17, 2022 Primary Election. (Petition ¶¶ 30-31.) The Petition was filed on July 20, 2022, approximately two months after the Third Circuit entered judgment in *Migliori* and Respondents' issuance of the guidance based on *Migliori*. The Court cannot reasonably conclude that this two-month delay was undue or inexcusable, or the result of a lack of due diligence.[14] Therefore, Respondents and Intervenor Respondents have not met their burdens of proof for a grant of relief on this basis.

### D. Whether the Dating Provisions in Sections 6 and 8 of Act 77 Have Been Invalidated and the Nonseverability Provision Implicated

Petitioners argue that *Migliori* and *Berks County* clearly invalidated the Dating Provisions, by prohibiting county boards of elections from using noncompliance with those provisions to reject an absentee or mail-in ballot that was returned with a declaration that lacked a handwritten date. According to Petitioners, they are entitled to summary relief because the invalidation of these parts of Sections 6 and 8, either on their face or in their application, has triggered the Nonseverability Provision and Act 77 must be declared void in order to give effect to the bargain struck by the General Assembly in enacting Act 77.

Respondents and Intervenor Respondents assert that they are entitled to summary relief because Petitioners fail to state a claim where neither *Migliori* nor *Berks County* invalidated or struck down the Dating Provisions, which remain a part of the Election Code. Instead, those decisions merely interpreted the Dating Provisions, along with other provisions of the Election Code, Pennsylvania election

---

[14] The Court is similarly unpersuaded that Respondents and Intervenor Respondents have clearly and without a doubt established that they are prejudiced as the result of any delay in Petitioners bringing this action.

16

law, and the Civil Rights Act, to ascertain the consequence of an elector not handwriting a date on the declaration. As a court did not invalidate any part of Act 77, Respondents and Intervenor Respondents argue that the Nonseverability Provision has not been implicated and they, not Petitioners, are entitled to summary relief.[15]

Petitioners' arguments are predicated on their position that it is clear and free from doubt that court decisions, particularly *Migliori* and *Berks County*, prohibit county boards of elections from rejecting absentee and mail-in ballots returned in envelopes that lack a handwritten date, which, in Petitioners' view, invalidate the Dating Provisions and trigger the Nonseverability Provision. However, we are not persuaded *Migliori* can be the basis upon which Petitioners are entitled to relief. One day before this matter was argued, the United States Supreme Court vacated the Third Circuit's order and directed the matter be dismissed as moot. *Ritter v. Migliori*, __ U.S. __, 143 S. Ct. 297 (2022). Thus, it cannot be said the Third Circuit, through *Migliori*, is prohibiting county boards of elections from enforcing Sections 6 and 8 of Act 77, as Petitioners claim.

Petitioners also point to the reasoning in *Berks County* that found *Migliori*'s analysis of the Materiality Provision persuasive, which was unaffected by the United States Supreme Court's vacatur of *Migliori*. However, the Pennsylvania Supreme Court has since weighed in on the interpretation of the Materiality Provision, albeit not resolving the issue of the Materiality Provision's interpretation but raising

---

[15] Respondents and Intervenor Respondents raise other arguments as to why the Nonseverability Provision is not enforceable, including that the Court is not bound by such provision as it is not an inexorable command and it would violate the Free and Equal Elections Clause to do so, and that, under the principles of statutory construction set forth in Section 1925(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1925(a), the alleged offending provisions are severable from the remainder of Act 77. Because the Court concludes there was no invalidation, the Court does not reach those arguments.

17

questions regarding the ongoing vitality of *Berks County*'s interpretation. In *Ball*, the Republican National Committee, the National Republican Congressional Committee, and the Republication Party of Pennsylvania, filed a petition, over which the Supreme Court assumed King's Bench jurisdiction.[16] The *Ball* petitioners sought a determination that a voter's failure to comply with the Dating Provisions rendered the ballot invalid, asked for a declaration that these ballots not be included in the pre-canvass or canvass of votes and be segregated, and requested that the Secretary be directed to withdraw guidance which would be contrary to these determinations. *Ball*, 289 A.3d at 7-8. The Secretary asserted, among other arguments, that the Materiality Provision precluded the relief sought as not counting the ballots at issue would violate federal law.

On November 1, 2022, a week before the November 8, 2022 General Election, the Supreme Court issued a per curiam order granting in part and denying in part the requests for injunctive and declaratory relief. In that order, the Supreme Court, relevantly, unanimously ordered that county boards of election **not** count "any absentee and mail-in ballots received for the November 8, 2022 [G]eneral [E]lection that are contained in undated or incorrectly dated outer envelopes," directed that the county boards of elections segregate and preserve those ballots, stated "[t]he Court is evenly divided on the issue of whether failing to count such ballots violates" the Materiality Provision, and advised that opinions would follow. *Ball v. Chapman*, 284 A.3d 1189 (Pa. 2022). Four days later, the Supreme Court issued a Supplemental Order defining "incorrectly dated outer envelopes" as "mail-in ballot outer envelopes with dates that fall outside the date range of September 19, 2022, through November 8, 2022" and "absentee ballot outer envelopes with dates that fall

---

[16] A group of voters also joined the petition in *Ball* but were found not to have standing. *Ball v. Chapman*, 284 A.3d 1189 (Pa. 2022).

18

outside the date range of August 30, 2022, through November 8, 2022." *Ball v. Chapman* (Pa., No. 102 MM 2022, filed Nov. 5, 2022).

On February 8, 2023, the Supreme Court filed those opinions, which, relevant to the Materiality Provision, reflect that three justices, Chief Justice Todd, and Justices Donohue and Wecht, would find that disqualifying ballots that arrive in undated or incorrectly dated return envelopes would violate the Materiality Provision, and three justices, Justices Dougherty, Mundy, and Brobson, would find no such violation. Notwithstanding that the Court was evenly decided on this issue, Justice Wecht's opinion provided a full analysis as to why he, Chief Justice Todd, and Justice Donohue, would find a violation of federal law consistent with the Third Circuit's result in *Migliori*. Justice Wecht then independently analyzed the statutory language of the Materiality Provision and the Election Code in support of that conclusion, which aligned with *Migliori*'s interpretation. *Ball*, 289 A.3d at 23-28. However, Justice Wecht concluded that because "[t]he Court having divided evenly on the question of the federal [M]ateriality [P]rovision[,]" it "issued no order on that basis." *Id.* at 28.

Justice Brobson, in a concurring and dissenting opinion joined by Justice Mundy, reluctantly proffered a "counter-explanation for why [they] believe our unanimous decision" to not count absentee or mail-in ballots that arrived in return envelopes that lacked a date or were incorrectly dated did not violate the Materiality Provision. *Ball*, 289 A.3d at 37-40 (Brobson, J., concurring and dissenting). Justice Dougherty, in a concurring and dissenting opinion, separately wrote that he believed that because the Court was deadlocked on the Materiality Provision, it is improper to opine on the unresolved "issue through what are plainly advisory expressions,"

and the Court should have let its November 1, 2022 Order "speak for itself and say no more." *Ball*, 289 A.3d at 34-35 (Dougherty, J., concurring and dissenting).

Thus, after the United States Supreme Court's vacatur of *Migliori* on procedural grounds, and the competing, but non-precedential, interpretations of the Materiality Provision proffered in *Ball* by five justices, the question of how the Materiality Provision should be interpreted in relation to the Dating Provisions remains outstanding. Indeed, it remains a subject of ongoing litigation in the federal courts.[17] Given the ongoing uncertainty on the issue, Petitioners have not established a clear right to relief for Act 77 to be voided in its entirety on this basis.

This leaves Petitioners' assertion that *Berks County*'s interpretation of Sections 6 and 8 of Act 77 precludes, as a matter of **state law**, county boards of elections from enforcing the Dating Provisions thereby invalidating those provisions and triggering the Nonseverability Provision. However, *Ball* has determined otherwise.

In its November 1 and 5, 2022 Orders, the Pennsylvania Supreme Court unanimously granted declaratory and injunctive relief and ordered county boards of elections not to count mail-in and absentee ballots received for the November 8, 2022 General Election that were contained in return envelopes that were undated or incorrectly dated, i.e., dated outside a specified range of dates related to that particular election. Subsequently, the Supreme Court explained why that relief was granted in its February 8, 2023 Opinion. The Supreme Court concluded, in *Ball*,

---

[17] Currently filed in the District of the United States District Court for the Western District of Pennsylvania (District Court) is *Pennsylvania State Conference of the NAACP v. Chapman*, No. 1:22-cv-00339. On June 8, 2023, the District Court issued a memorandum opinion denying a motion to dismiss the amended complaint filed by the Republican National Committee, the National Republican Congressional Committee, and the Republican Party of Pennsylvania. *Pa. State Conf. of the NAACP v. Chapman*, No. 1:22-cv-0339. (W.D. Pa. filed June 8, 2023).

that the dating command in Sections 6 and 8 of Act 77 was "unambiguous and mandatory" which made any absentee and mail-in ballot returned in an undated envelope invalid. *Ball*, 289 A.3d at 21. As for incorrectly dated ballots, the Court held that "[i]mplicit" in the Dating Provisions' "textual command that electors 'shall . . . fill out, date and sign the declaration,'[] is the understanding that 'date' refers to the day upon which the elector signs the declaration."[18] *Id.* at 22 (footnote omitted). The Court then indicated that "county boards of elections retain authority to evaluate ballots that they receive in future elections" to determine whether those ballots fall within the "date ranges derived from statutes indicating when it is possible to send out mail-in and absentee ballots" to determine if they comply with the Election Code. *Id.* at 23. The Supreme Court's analysis and relief granted in *Ball* have answered the question of the Dating Provisions' interpretation, and that answer is at odds with

---

[18] Justice Donohue joined the Majority opinion except for its analysis regarding incorrectly dated return envelopes, filing a concurring opinion joined by Chief Justice Todd. Therein, Justice Donohue explained that while she concurred in the result as to the November 8, 2022 General Election (having been part of the unanimous court issuing the November 1 and 5, 2022 Orders), she was unconvinced by the rationale proffered for supporting those rulings in future elections and could not find an acceptable alternative to do so. *Ball*, 289 A.3d at 29-30 (Donohue, J., concurring). Justice Donohue questioned the Majority's rationale, observing that the history in this case, and the Majority's holding that "there is an 'implicit' 'understanding' in the [E]lection [C]ode that 'date' means the date of signature," reflected that the Dating Provisions were not clear and unambiguous. *Id.* at 29 (quoting *Ball*, 289 A.3d at 22). Justice Donohue observed that if there was such an implicit understanding, the November 5, 2022 Order would have been unnecessary. Instead, Justice Donohue would conclude that the Majority's approach – that the date means date of signature - looks beyond the plain language thereby writing language into Sections 6 and 8 of Act 77. *Id.* at 30. In Justice Donohue's view, that the Court has been asked to consider the issue "belies the . . . assumption that it is 'evident' that the date instruction means date of signature" and that the "ambiguity must be resolved in favor of protecting the franchise," which would require the counting of any absentee and mail-in ballot that was received on or before the primary or general election day if the declaration on the outer envelope is signed and bears a date affixed by the elector. *Id.* at 30-31.

21

that in *Berks County*, which, of course, must give way. Thus, Petitioners have not established a clear right to the relief requested based on this claim.

Further, even if these intervening events had not occurred, the Court would not be persuaded that Petitioners have met the high standard of establishing a clear right to relief. The *Migliori* and *Berks County* Courts **interpreted** the Dating Provisions, along with the Materiality Provision of the Civil Rights Act and/or other related provisions of the Election Code and Pennsylvania election law, in the specific controversies before them to determine what the collateral consequence would be under federal and/or state law if an elector did not handwrite a date on the declaration. "[T]he proper interpretation of statutory provisions for purposes of resolving a controversy before the courts is a matter entrusted to the Judiciary." *HSP Gaming, L.P. v. City of Philadelphia*, 954 A.2d 1156, 1181 (Pa. 2008). **Interpreting** the statute, the Third Circuit and this Court concluded that the statute did not require an otherwise timely received, valid absentee or mail-in ballot cast by an eligible Pennsylvania elector to be thrown out. *Migliori*, 36 F.4th at 155, 162-64; *Berks Cnty.*, slip op. at 57-58, 64-65. These interpretations did not invalidate the Dating Provisions, as neither opinion struck the Dating Provisions from the Election Code or held that electors cannot or should not handwrite a date on the declaration in accordance with those provisions. Even under these interpretations, the Dating Provisions remain part of the Election Code and continue to instruct electors to date the declaration on the return mailing envelope, which, as history has shown, a majority of electors will do. The Dating Provisions were not declared invalid or stricken from the statutory scheme, as occurred, for example in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827, 838, 840-41 (Pa. 2017), where the Court invalidated as unconstitutional former Section

22

306(a.2) of the Workers' Compensation Act (WC Act),[19] *formerly* 77 P.S. § 511.2, which allowed employers to require claimants to undergo impairment rating evaluations (IRE) using "the most recent edition of the American Medical Association 'Guides to the Evaluation of Permanent Impairment.'" In *Protz*, the Court struck not only the unconstitutional language but also related provisions from the WC Act, thereby removing the IRE process from the WC Act. Similarly, in *Robinson Township, Washington County v. Commonwealth*, 83 A.3d 901 (Pa. 2013) (plurality), the Court invalidated as unconstitutional multiple sections of Act 13 of 2012,[20] striking those provisions, along with related provisions, from Act 13. The actions set forth in the invalid provisions could no longer be performed. Petitioners have not cited authority, and our research has found none, in which a nonseverability clause is triggered by a judicial interpretation of a statutory provision that did not declare the provision invalid, and, following the interpretation, the provision remained a part of the statute.

Accordingly, for the foregoing reasons, the Nonseverability Provision was not triggered, Petitioners have not established that their right to relief on their claim that Act 77, and all amendments thereto, must be declared void, and Petitioners' Application is denied. Conversely, Respondents and Intervenor Respondents have

---

[19] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2. Section 306(a.2) was repealed by Section 1 of the Act of October 24, 2018, P.L. 714, No. 111, which also added Section 306(a.3) to the WC Act, 77 P.S. § 511.3, implementing a revised impairment rating evaluation process.

[20] Act of February 14, 2012, P.L. 87, No. 13. Act 13 amended the Pennsylvania Oil and Gas Act, 58 Pa.C.S. §§ 2301-3504.

met their burden of establishing a right to summary relief, and their Cross-Applications are granted.[21]

_____

**RENÉE COHN JUBELIRER,** President Judge

Judges Covey and Wallace did not participate in the deciding of this matter.

---

[21] Because Respondents' and Intervenor Respondents' POs overlap with the arguments made in their Cross-Applications, which the Court has resolved and upon which summary relief is granted, the POs are dismissed as moot.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy R. Bonner, P. Michael Jones,   :
David H. Zimmerman, Barry J.   :
Jozwiak, Kathy L. Rapp, David   :
Maloney, Barbara Gleim, Robert   :
Brooks, Aaron J. Bernstine, Timothy   :
F. Twardzik, Dawn W. Keefer, Dan   :
Moul, Francis X. Ryan, and Donald   :
"Bud" Cook,   :
                   Petitioners   :
  :
           v.   :   No. 364 M.D. 2022
  :
Leigh M. Chapman, in her official   :
capacity as Acting Secretary of the   :
Commonwealth of Pennsylvania, and   :
Commonwealth of Pennsylvania,   :
Department of State,   :
                  Respondents   :

# O R D E R

**NOW**, June 27, 2023, in accordance with the foregoing opinion, Petitioners'
Application for Summary Relief on their Petition for Review in the Nature of an
Action for Declaratory Judgment (Petition) is **DENIED**, the Cross-Applications for
Summary Relief filed by Respondents and by intervenors the Democratic National
Committee and Pennsylvania Democratic Party, and the Democratic Senatorial
Campaign Committee and Democratic Congressional Campaign Committee
(collectively, Intervenor Respondents) are **GRANTED**, Francis X. Ryan is
dismissed as a party for lack of standing, and summary relief is **ENTERED** in favor
of Respondents and Intervenor Respondents. Having granted Respondents' and

Intervenor Respondents' summary relief, their Preliminary Objections filed to the Petition are **DISMISSED AS MOOT**.

_____
**RENÉE COHN JUBELIRER,** President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy R. Bonner, P. Michael Jones,   :
David H. Zimmerman, Barry J.   :
Jozwiak, Kathy L. Rapp, David   :    No.  364 M.D. 2022
Maloney, Barbara Gleim, Robert   :
Brooks, Aaron J. Bernstine, Timothy F.   :    Argued: October 12, 2022
Twardzik, Dawn W. Keefer, Dan   :
Moul, Francis X. Ryan, and Donald   :
"Bud" Cook,   :
                Petitioners   :
  :
                v.   :
  :
Leigh M. Chapman, in her official   :
capacity as Acting Secretary of the   :
Commonwealth of Pennsylvania, and   :
Commonwealth of Pennsylvania,   :
Department of State,   :
                Respondents   :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge

CONCURRING OPINION
BY JUDGE McCULLOUGH                      FILED: June 27, 2023

Given that the Third Circuit Court of Appeals' decision in *Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022), *vacated sub nom. Ritter v. Migliori*, 142 S. Ct. 1824 (2022), was vacated as moot, and the Pennsylvania Supreme Court was unable to reach a consensus in *Ball v. Chapman*, 289 A.3d 1 (Pa. 2023), on the issue of whether the disqualification of ballots for failure to comply with the Dating Provisions of Act

77 of 2019 (Act 77),[1] 25 P.S. §§ 3146.6(a) (absentee ballots), 3150.16(a) [2] (mail-in ballots), violates federal law, I am constrained to agree with the Majority's decision that Act 77 has not been invalidated by the majority of any court of competent jurisdiction. I write separately to enlarge upon the uncertainty that remains following *Ball*, specifically the Supreme Court not reaching a majority decision on this issue or overruling *Chapman v. Berks County Board of Elections* (Pa. Cmwlth., No. 355 M.D. 2022, filed August 19, 2022) (Cohn Jubelirer, P.J., single-judge op.) on that point.

In *Migliori*, the Third Circuit Court of Appeals held that a voter's ballot cannot be rejected because he/she failed to comply with the Dating Provisions because to reject it on that basis would be a violation of the "Materiality Provision" set forth in Section 1971 of the Civil Rights Act of 1964, codified at 52 U.S.C. § 10101(a)(2)(B). The Third Circuit Court of Appeals concluded that the Materiality Provision was enforceable under 42 U.S.C. § 1983, and that disqualification of ballots for failure to comply with the date requirement violated that provision. Essentially, after *Migliori*, there were no consequences for voters who fail to comply with the Dating Provisions. A voter whose ballot was not counted because he/she failed to print the date on the outer envelope in accordance with the Dating Provisions had complete and total recourse in federal court under *Migliori* to have his/her vote counted thereby, leaving the Dating Provisions without an enforcement mechanism.

*Migliori* was decided on May 20, 2022. Three months later, finding *Migliori* persuasive and relying on *Migliori's* analysis of the Dating Provisions, this Court in *Berks County* concluded that invalidating the ballots at issue for the sole reason that the declaration on the return envelope did not contain a handwritten date violates the Materiality Provision of the Civil Rights Act. *Chapman v. Berks County Board of*

---

[1] Act of October 31, 2019, P.L. 552, No. 77.

[2] Sections 1303 and 1306-D of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended*, added by the Act of March 6, 1951, P.L. 3, and Act 77, respectively.

*Elections* (Pa. Cmwlth., No. 355 M.D. 2022, filed Aug. 19, 2022), slip op. at 58-65. The *Berks County* Court ordered the Berks County Board of Elections, the Fayette County Board of Elections, and the Lancaster County Board of Elections to count the undated ballots for that reason.

On October 11, 2022, the United States Supreme Court vacated the Third Circuit's order in *Migliori* and directed the matter be dismissed as moot. *Ritter v. Migliori*, 143 S. Ct. 297 (2022).

On the issue of whether *Berks County* precludes, as a matter of state law, county boards of elections from enforcing the Dating Provisions, the Majority concludes, and I agree, that the United States Supreme Court's vacatur of *Migliori* on mootness grounds did not affect the *Berks County* decision. The Majority, however, concludes that our Supreme Court's decision in *Ball* stands in contrast to *Berks County*, thereby overruling it. This is where I must part ways from the Majority.

In *Ball*, our Supreme Court, due to an evenly divided vote, was unable to reach a consensus as to whether enforcing Pennsylvania law with respect to undated and incorrectly dated ballots would violate the Materiality Provision. Although a majority of the Justices of the Supreme Court are in agreement that the Election Code requires disqualification of undated absentee and mail-in ballots, the Court was divided evenly on the question of whether discounting undated and incorrectly dated ballots would violate the federal Materiality Provision and issued no order on that basis.

The Majority nevertheless concludes that *Ball* effectively overruled *Berks County* because *Ball* "answered the question of the Dating Provisions' interpretation, and that answer is at odds with *Berks County*, which, of course, must give way." *Bonner v. Chapman*, __ A.3d ___ (Pa. Cmwlth., No. 364 M.D. 2022, filed June 27, 2023), slip op. at 21-22. I respectfully disagree that *Ball's* conclusion with respect to the statutory interpretation of the Election Code's Dating Provision sufficed to overrule

PAM - 3

the portion of *Berks County* that held voters cannot be denied their right to vote based on an omission immaterial to determining their qualifications to vote.

First, our Supreme Court in *Ball* did not expressly overrule *Berks County*. Second, it did not implicitly overrule *Berks County* because it failed to definitively resolve the federal Materiality Provisions question, *i.e.*, whether the disqualification of ballots for failure to comply with the date requirement violates the Civil Rights Act, that *Berks County* resolved. Rather, *Ball's* instruction to the county elections boards not to count undated or incorrectly dated ballots was based strictly on its statutory interpretation of the Election Code, not on the federal Materiality Provision. *Ball* and *Berks County*, therefore, do not conflict.

*Berks County*, which appears to be good law in light of not being explicitly or implicitly overruled by a majority of our Supreme Court, recognized a claim for civil rights violation by not counting the undated ballots. Thus, after *Ball*, we are left with a statute that requires that a date be placed on the outside envelope (per *Ball*), but decisional law from this Court (*Berks County*), which, in effect, renders the requirement unenforceable under the Civil Rights Act.

My analysis also differs from the Majority as to the impact of *Berks County* by characterizing the decision as mere "interpretation" of the Dating Provisions. The *Berks County* Court did not just offer an interpretation of the Dating Provisions. Rather, it prohibited the election boards from discounting undated or incorrectly dated ballots. Moreover, by holding that the boards of elections must count the voters' ballots even though they were undated/incorrectly dated, it appears that *Berks County* essentially invalidated the Dating Provisions for all intents and purposes, regardless that it did not expressly so state. *See, e.g., Free Speech Coalition, Inc. v. Attorney General of the United States*, 825 F.3d 149 (3d Cir. 2016) (holding that

inspection requirements in Child Protection and Obscenity Enforcement Acts[3] were facially unconstitutional without saying it was striking the provision); *Peake v. Commonwealth*, 132 A.3d 506, 521 (Pa. Cmwlth. 2015) (holding that the Older Adults Protective Services Act's lifetime employment ban provision was unconstitutional on its face – but not striking it from the Act).

The consequences of not dating the outer envelope remain unclear. Hence, given the current state of the law, it appears that a voter, whose ballot is rejected in Pennsylvania because it is not dated on the outside envelope, may enforce the Materiality Provision of the Civil Rights Act by filing a private right of action under 42 U.S.C. § 1983. Voters whose ballots are rejected in Pennsylvania because they are not dated on the outside envelope are left in limbo as to whether they may enforce the Materiality Provision of the Civil Rights Act by filing a private action under 42 U.S.C. § 1983. Boards of elections in Pennsylvania lack clear guidance as to whether or not counting an undated ballot subjects them to a federal civil rights violation claim.

## CONCLUSION

The right of suffrage is a fundamental constitutional right as recognized by the Election Code. The citizens of Pennsylvania are entitled to elections that are fair and orderly and to be fully informed of the electoral process. In light of current precedent, I am constrained to concur with the Majority in the regards noted. The remaining state of flux confronting Pennsylvania citizens requires immediate establishment of clear direction in conformance with constitutional standards.

_____
PATRICIA A. McCULLOUGH, Judge

---

[3] 18 U.S.C. §§ 2251-2254; 2255; 2258-2260.